484 A.2d 92

**COMMONWEALTH of Pennsylvania**

v.

**Donald L. GAERTTNER, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1984.

Filed Nov. 2, 1984.

---

204

206

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

CAVANAUGH, Judge:

The appellant, Donald L. Gaerttner, was convicted of involuntary deviate sexual intercourse, indecent assault and corruption of a minor, following a jury trial before Nygaard, J.[1] His motions for new trial and in arrest of judgment were denied and he was sentenced to imprisonment for consecutive terms totalling not less than thirteen and one-half nor more than twenty-seven years. He has appealed to this Court from the judgment of sentence.

The testimony established that in early January, 1980, Melissa Decker, a young girl of ten years of age, was taken by her mother, Nancy Decker, to live with the appellant until Mrs. Decker obtained a place to live for herself and her three children, including Melissa. Mrs. Decker's mother, Mildred Engelhardt, also resided at the Gaerttner residence during this time. During the period that Melissa Decker resided at the appellant's home from January 2, 1980, until January 12, 1980, the appellant and George Elliott allegedly sexually assaulted Mellissa Decker on a number of occasions.

The appellant has raised several issues on appeal. The first issue deals with alleged ineffective assistance of counsel which may be sub-divided into four categories as follows: (1) trial counsel (Mr. Vogel) and post-trial counsel (Mr. Zak) were ineffective for failing to challenge the competency of the victim, Melissa Decker, an eleven-year-old child who was, according to the testimony of a psychologist, mentally retarded; (2) trial counsel did not permit the appellant to testify in his own behalf although he wanted to; (3) trial counsel failed to call the appellant's wife as a witness to attack the credibility of the Commonwealth wit-

---

1. Appellant's alleged offenses occurred in Erie County and trial was held in that county with the jury having been brought from Somerset County, Pennsylvania.

nesses; and (4) trial counsel failed to adequately prepare defense witnesses prior to trial and to call other witnesses.[2]

Three of the four alleged instances of ineffectiveness of counsel were raised by Mr. Zak in his amendments to the motion for new trial, and were considered by the court below in a hearing on April 26, 1982.[3] The only issue of ineffectiveness not raised by Mr. Zak in the court below was the issue dealing with the failure to challenge the competency of the victim to testify and we shall hereafter deal with this issue.

■ With respect to the allegation that Mr. Vogel did not permit the appellant to testify, Mr. Vogel testified that he thought it would have been extremely poor strategy for the appellant to testify, especially in view of his prior criminal record, although he thought that the appellant would testify. The appellant wanted to testify as to what he considered to be a conspiracy against him by the state police, the Children's Organization of Northwestern Pennsylvania and certain individuals and his counsel thought that such testimony would not be regarded as credible by the jury. However, the appellant made up his own mind not to testify

2. Appellant was represented by several attorneys in the current criminal proceeding and for a time acted as his own counsel. James Vogel, Esquire, represented the appellant during his trial which ran from August 24, 1981 to August 26, 1981. Mr. Vogel filed motions for new trial and in arrest of judgment. He withdrew from the case and Kenneth Zak, Esquire, took over the defense and filed amendments to the motions for new trial and in arrest of judgment. The charges of ineffective assistance of counsel are leveled by appellate counsel against James Vogel, Esquire, and Kenneth Zak, Esquire.

3. The amendment to the motion for new trial and/or arrest of judgment filed by Mr. Zak stated:

3. Attorney James K. Vogel, defendant's trial counsel, improperly and ineffectively represented the defendant in the following particulars:

(a) Mr. Vogel failed in refusing to call the defendant as a defense witness. The defendant repeatedly demanded that Mr. Vogel call him as a witness and Mr. Vogel refused to do so.

(b) Mr. Vogel failed to call defendant's wife, Rose Gaerttner, as a witness, even though the defendant demanded that he do so.

(c) Mr. Vogel failed and refused to place approximately twenty other witnesses requested by the defendant on the stand.

(d) Mr. Vogel failed to adequately prepare the defense witnesses prior to trial and as such, the witnesses were insufficiently prepared for both direct and cross-examination.

and he was not in any way coerced into this decision by Mr. Vogel.

■ The appellant's next contention is that Mr. Vogel was ineffective for not calling appellant's wife to testify in his behalf. Defense counsel spoke with the appellant's wife prior to trial and before she had been confined to Muncy for conviction on charges of hindering the apprehension of, and tampering with, witnesses, matters involved in this case. Mr. Vogel felt that her testimony would not be beneficial to the appellant because she had expressed hostility towards him, was related to him and her testimony would be mainly cumulative.[4] Mrs. Gaerttner testified at the hearing of April 26, 1982, that she wanted to testify at her husband's trial and that she would have testified that as far as she knew her husband had not sexually assaulted the child. She also testified that she told Mr. Vogel that it would have been a very traumatic experience for her to testify.

■ The hearing of April 26, 1982, also dealt with the appellant's allegation of ineffectiveness of counsel based on failure to adequately prepare defense witnesses and to call other witnesses. Mr. Vogel testified that there were several defense witnesses that he advised against calling because their testimony went to the conspiracy theory that the appellant wanted to pursue and which counsel felt would be disadvantageous to pursue. Counsel felt that his best defense was to rely on the testimony of Dr. Pizzat, a

---

**4.** With respect to the testimony by appellant's wife (referred to as Rose) Mr. Vogel testified as follows:

I felt that Rose's testimony would be mainly cumulative, that it would not be regarded as highly [sic] because of her relationship to Don and that her credibility could be brought into question and that there was still a doubt in my mind about the hostility she expressed before. I wasn't certain of what she would say on the witness stand and did not feel that I should take a chance on calling someone that I was unsure of that could have a devastating effect if she did not, in fact—in fact did decide to express that hostility on the stand. I informed Don of my reasons and the decision was basically in the same language as the decision about himself, he said that he would like her to testify but that I was his attorney and that he was going to go along with my advice and do it the way I felt was best and he agreed with my decision.

psychologist called by the Commonwealth. "I felt that was a good opportunity for us to have a defense on which we could hang our hats because Dr. Pizzat had testified that Melissa Decker was of a personality type that was intellectually deficient that would make her willing to believe things that did not happen and that her perception of reality could be distorted and that she could remember something as truthful and believe it as true and testify it is the truth when it in fact never had happened and I felt that type of approach was much more beneficial than getting into the conspiracy type of theory he discussed with me." With respect to not calling certain witnesses, "counsel will not be deemed ineffective for having failed to call a witness unless the appellant is able to demonstrate that the witness's testimony would have been helpful to the defense." *Commonwealth v. McCaskill*, 321 Pa.Super. 266, 275, 468 A.2d 472, 476 (1983). The appellant has not indicated in any way how the testimony of witnesses who were not called would have helped him.

Appellant also contends that defense counsel did not adequately prepare the two defense witnesses who did testify, Mildred Engelhardt and Nancy Decker. Trial counsel spoke to the two witnesses on a number of occasions before trial. He warned the witnesses, who in effect would be testifying against their own daughter and grand-daughter, that they would be subject to cross-examination. At trial the victim's mother, Nancy Decker, testified that she was a friend of appellant and had taken her daughter, Melissa, to stay at the appellant's home in January, 1980 until she got settled in her own home. She testified as follows concerning the appellant's conduct towards her daughter:

We were talking in my kitchen and she says, "Mommy, I wish this stuff would hurry up and be over, I am tired of it." I said, "Missy, tell the truth. Did it happen or didn't it?" And she kind of looked down at me and I said, "Missy, did it?" she says, "No." And I said, "Then why are you doing this?" Then Missy, she said, "Because

Children's Services told me if I didn't testify against Donny, she said, that they would see that I would never see you again."

Q. And this is a statement made by your daughter to you?

A. My Melissa, yes, sir.

Q. Around Christmas time of 1980?[5]

The second witness on behalf of the appellant was Mildred Engelhardt, Melissa's grandmother. She also testified that she was a friend of the appellant and had known him since he was a little boy. She stayed at the appellant's house from January 2, 1980, until January 12, 1980, when her grandaughter was there and she testified that she never left the house during that time. She further stated that during the period when the alleged offenses occurred Melissa never said anything to her about the appellant doing anything to her.

Appellant contends that Mr. Vogel was ineffective for not spending more time with the defense witnesses "educating them as to the trial process." Defense counsel reviewed the testimony of the two defense witnesses, and went over their testimony with them. If they had been believed by the jury their testimony could have been helpful to the appellant.

We find the above allegations of ineffectiveness of trial counsel to be without merit. Initially, we note that the burden of proving ineffective assistance of counsel falls upon the appellant. *Commonwealth v. LaSane*, 479 Pa. 629, 389 A.2d 48 (1978). It is by now basic that the standard by which we gauge counsel's effectiveness is whether the particular course chosen by counsel had some

5. Melissa's mother also testified that her daughter told her that the appellant had not hurt her. The testimony was as follows:

A. And then she says—I says, "Missy, did Donny hurt you?" And Missy is one with me that she is always, if she has told me the truth, she looks me right in the eye. If she lies, she will look to the floor and she started looking to the floor and I said, "Missy, tell me the truth, now." I says, "Did Donny touch you?" She says, "No."

Q. She said, "No"?

A. She said, "No."

reasonable basis designed to effectuate his client's interest, and the balance tips in favor of finding effectiveness as soon as it is determined that trial counsel's decision had a reasonable basis. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth v. Manning*, 263 Pa.Super. 430, 398 A.2d 212 (1979). The fact that the appellant was found guilty of the charges against him does not give credence to the theory that counsel's conduct was not designed to effectuate his client's interest. On the contrary, we are convinced that Mr. Vogel, an experienced defense attorney, was most careful and thoughtful in the preparation of his defense.

The fourth area in which the appellant's present counsel claims ineffectiveness was not raised in the court below. Appellate counsel contends the trial counsel (Mr. Vogel) and post-trial counsel (Mr. Zak) were not effective as both

> [f]ailed to challenge the competency of a child witness where the court had made a ruling of competency prior to the testimony of a later Commonwealth witness, a clinical psychologist, who testified that the child suffered from minimal brain dysfunction which interfered with her memory function, that she was mentally retarded, and also that the child could easily misperceive events, relate the misperceptions as reality, and, therefore, lie non-deliberately.

The thrust of this contention is that Melissa was not a competent witness and counsel below were ineffective for not raising the issue of her competency. We do not agree. Melissa was ten years old at the time of the alleged offense and eleven years old at the time of the trial. The trial judge pursued the question of her competency to testify and found her qualified. Before Melissa testified the court inquired whether she knew the difference between lying and telling the truth and the consequences of not telling the truth. The court determined that Melissa was competent to testify and stated,

> With respect to the question of this witness, I find a capacity to communicate and to frame and to actually

express intelligent answers to my questions, has a mental capacity to observe and remember what she has observed and a definite consciousness, both in the words she has spoken and in her demeanor, in her duty to speak the truth and is competent to testify.

The issue of the witness's competency was specifically decided by the court prior to her testimony. Where a witness is under fourteen years of age, the trial judge must make a careful inquiry into his or her mental capacity. *Commonwealth v. Short,* 278 Pa.Super. 581, 420 A.2d 694 (1980). Nevertheless, the competency of a prospective witness is a matter left to the discretion of the trial judge, whose ruling will not be reversed in the absence of an abuse of discretion. *Commonwealth v. Fultz,* 316 Pa.Super. 260, 462 A.2d 1340 (1983). In *Commonwealth v. Short, supra,* the victim was a nine-year-old child who had been sexually assaulted, and who was found to be a competent witness. In our own case, the judge inquired of Melissa as to whether she went to church and if she knew what happens to people who don't tell the truth and she responded that they get into "deep trouble." While she stated that she did not know what an oath is, that did not render her incompetent *per se.* As noted in *Commonwealth v. Payton,* 258 Pa.Super. 140, 143, 392 A.2d 723, 725 (1978),

> There is more to a child's consciousness of the duty to speak the truth than being able to give a clear example of a lie or to understand the concept of an "oath." In fact, the trial judge's opportunity to observe the demeanor, alertness, thoughtfulness, and sincerity of a child witness may be more informative than the answers the child gives to questions such as "What is a lie?" and "What will happen to you if you tell a lie?"

*See also, Commonwealth v. Mangello,* 250 Pa.Super. 202, 378 A.2d 897 (1977).

The appellant contends that notwithstanding the trial court's determination of competency, that subsequent to the testimony to the Commonwealth's psychologist, the question of competency should have been raised again, and

failure to do so amounted to ineffective assistance of counsel. Dr. Pizzat, a clinical psychologist, testified on behalf of the Commonwealth. He had administered I.Q. and personality tests to Melissa at the request of the Children's Service Agency of Erie County. Her overall I.Q. was 69 "which is considered to fall in the mildly retarded range." He further stated that "from these findings, we assume that Melissa is kind of behind schedule; at the time I tested her, she is what might be called a slow learner." Dr. Pizzat also testified:

Q. Can you tell us anything from your testing and from that interview about Melissa's ability or propensity for fabrication or make up?

A. I felt from my findings of her personality functions that she wasn't likely to be manipulative or to make up stories about this case. I think that she would tend to be pretty honest in terms of how she saw things happening. I didn't think that she would fabricate, in other words.

Appellant contends that the following testimony of Dr. Pizzat on cross-examination by Mr. Vogel required counsel to challenge Melissa's competency as a witness:

Q. You said from your findings that she seemed to you to be honest about how she saw things?

A. Yes.

Q. Now, the use of that latter part of that phrase, how she saw things, did that mean that in your opinion sometimes her perception might differ from reality, that she might be honest in how she saw it but misperceived it?

A. Sure. For example, if the situation were, as I mentioned before, a strange one for her, something that she wasn't used to, she could misperceive it simply because she wouldn't understand it and that would be a function of a development. Primarily what I meant to apply [sic]; that is I don't think she lies deliberately.

▆▆▆▆ The testimony goes not to the witness's competency to testify, but to her credibility as a witness. The competency of the witness had already been determined and failure to assert a baseless claim does not constitute ineffec-

tiveness of counsel. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). In *Commonwealth v. Bailey*, 322 Pa.Super. 249, 469 A.2d 604 (1983), the appellant claimed that counsel was ineffective for not objecting to the trial court's determination that a nine year old victim of an indecent assault was a competent witness. The defense was designed to show that the victim had a vivid imagination and that the alleged assault was a product of her imagination. The court found that counsel was not ineffective for not objecting and stated at 322 Pa.Super. at 260, 469 A.2d at 610: "Because the trial judge who makes the competency ruling has a much superior opportunity to assess the competency of the child witness, an appellate court should virtually never reverse the ruling, *the better practice being to accept the testimony on its face and leave the matter of credibility to the factfinder.*"[6] *(Emphasis added).*

In this case, counsel attacked Melissa's credibility as a witness and was not further required to challenge her competency as a witness as the trial judge had already found her competent to testify. The testimony of the clinical psychologist was not such as to require a redetermination of this issue.

The appellant also contends that the court below erred in refusing to grant a mistrial when a Commonwealth witness testified that he met the appellant in prison ten years before

---

6. Wigmore in his Treatise on Evidence, at 3 A Wigmore § 931 (Chadbourn rev.1970) states:

§ 931. In general. We have already seen that the general organic capacity to observe, recollect, and narrate, must exist to a certain minimum degree in order that the witness may be admitted at all. Insanity, idiocy, and the like, if existing to such a degree as practically to destroy the mental capacities, render the witness incompetent to that extent (§§ 492–500 *supra*). But the defect may not exist to such a degree, and yet the capacity may by no means be of the normal sort; and this may therefore be made to appear for the purpose of discrediting the witness. *The modern tendency, as already noted (§ 492 supra), is to avoid treating any such mental condition as a cause of total incompetency, except in extreme cases, and to admit the person as a witness, leaving the defect in question to have whatever weight it deserves as discrediting the witness' powers of observation, recollection, or communication.* (Emphasis added.)

the trial. The basis for the motion for mistrial was the following testimony of George Elliot who at the time of the appellant's trial was himself confined to Erie County Prison:

Q. Mr. Elliot, are you familiar with the defendant in this case, Mr. Donald Gaerttner? Do you know the man?

A. Yes.

Q. How long have you known him?

A. Ten years.

Q. Ten years. And how did you meet him, how do you know Mr. Gaerttner?

A. I believe I met him in the County Jail a long time ago.

█ Mr. Vogel moved for a mistrial which was denied by the court below, which gave immediate curative instructions and told the jury to disregard the answer to where the witness met the appellant.[7] It is fundamental that a mistrial should be granted when the jury may reasonably infer from the testimony that the accused had engaged in prior criminal activity. *Commonwealth v. Shepherd*, 269 Pa.Super. 291, 409 A.2d 894 (1979).

In this case, the answer was clearly in response to the question. We do not agree with the trial court's characterization of it as "spontaneous." When the question was asked the prosecutor either knew what the answer would be, in which case there was an intentional and improper introduction of evidence of prior criminal activity, or he did not know what the answer was and assumed the risk. Since the witness stated he knew the appellant for ten years there was nothing more of relevance to be gained by asking the witness how he met the appellant. We take further note that the prosecutor was not adverse to this answer, which in our opinion clearly indicated prior criminal activity, as he stated to the court after the answer was given:

MR. CONNELLY: The Commonwealth respectfully submits that if the Court should so choose, [it] could give

7. The court below characterized the answer by Mr. Elliot as "spontaneous" but this is not an accurate interpretation. The answer was in direct response to the prosecutor's question as to how the witness came to know the appellant.

instructions that since it was a long time ago the answer does not indicate that this Defendant was convicted of anything else; and *further that the Commonwealth intends to introduce a prior record to evidence as expected in this case.* (Emphasis added).

The case of *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973) established the principle that where a witness testified that the appellant "stated that he was in prison with him and knew him well" this statement conveys "by the clearest implication, a prior conviction for a serious offense." 453, Pa. at 452, 453, 309 A.2d at 590, 591. Prejudice results where the testimony conveys to the jury either expressly or by reasonable implication the fact of a prior criminal offense. *Commonwealth v. Nichols*, 485 Pa. 1, 400 A.2d 1281 (1979). In the case before us the answer to the question asked by the prosecutor implied a prior criminal conviction as the only realistic inference that could be drawn from the answer that Mr. Elliot met the appellant in prison and that the appellant was also confined to prison as a result of a conviction. At the time Mr. Elliot testified he himself "was residing" in the Erie County prison, and in fact was wearing prison garb. It cannot seriously be contended that the appellant met Elliot in the county jail while the appellant was in a capacity other than as a prisoner. A police officer for example may testify that he knew a defendant before his arrest and such testimony need not create an inference of prior criminal activity as he may have known the person for any number of reasons. *Commonwealth v. Sanders*, 296 Pa.Super. 376, 442 A.2d 817 (1982). However if a prison inmate testifies that he met a criminal defendant in prison the obvious inference is that the defendant was a fellow prisoner.

We must determine if the question and answer, in view of the curative instructions, were of such a prejudicial nature as to deny the appellant a fair trial. The problem was put in focus in *Commonwealth v. Bowermaster*, 297 Pa.Super. 444, 450, 451, 444 A.2d 115, 118 (1982), opinion by Cava-

naugh, J., concurring and dissenting opinion by Spaeth, J. as follows:

> The "controlling question" in cases raising this issue "is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). If such an inference is created, then a mistrial must be granted. However, the Pennsylvania Supreme Court stated in *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979) that "[not] all references which may indicate prior criminal activity warrant reversal." Mere "passing references" to prior criminal activity do not warrant reversal unless the record illustrates that prejudice resulted from the reference. *Ibid.* As we stated in *Commonwealth v. Colon*, 264 Pa.Super. 314, 321–322, 399 A.2d 1068, 1071 (1979), there is "no per se rule requiring a new trial for every reference [to prior criminal conduct]. The decision whether to declare a mistrial when faced with these situations is addressed to the sound discretion of the trial judge." [8]

In *Bowermaster, supra,* the objected to testimony was: "Well, this is my first time, and I figured that, you know, well, I just figured that they would be easier on me than they would be on him basically." Cautionary instructions were not given by the Court. We determined that the objected to remark did not deprive the appellant of a fair trial and that a mistrial was properly refused. The law is clear that if the prejudice to the defendant denies him a fair trial then he must be granted a new trial. The problem, of course, is determining whether the prejudice which certainly follows from the improper introduction of evidence of prior criminal convictions, rises to the level that denies the defendant a fair trial. The late Justice Musmanno in *Lobalzo v. Varoli*, 409 Pa. 15, 21, 185 A.2d 557, 561 (1962),

---

8. In *Commonwealth v. Bowermaster, supra,* the court held that there was no indication that the district attorney intentionally sought a response which would prejudice the defendant by indicating prior criminal activity.

crystalizes the problem with which we are now confronted as follows:

When an error in a trial is of such consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial.

We must determine if the question and. answer, denied the appellant a fair trial notwithstanding the court's curative instructions.

THE COURT: Members of the jury, you will recall in my opening statement I said certain things, certain testimony may come into the court which I will have to ask you to disregard and when you disregard it, you are not to consider it. You will recall that that is what I am doing right now, and *I am telling you, members of the jury, that you are to disregard the last answer as to where the witness met the Defendant.* (Emphasis added.)

An analysis of the cases dealing with the problem indicates that the courts have taken opposing tacks. One line of cases mandates a new trial as the court considered the evidence was sufficiently prejudicial. An arbitrary starting point in this line of cases would be *Commonwealth v. Clark, supra.* In *Commonwealth v. Rivers,* 238 Pa.Super. 319, 357 A.2d 553 (1976), we held that the court below erred in denying a mistrial when the defense counsel elicited on cross-examination of a prosecution witness, a state police officer, that an individual told him that the defendant "had done a lot of federal time before." 238 Pa.Super. at 322, 357 A.2d at 555. This Court relying on *Commonwealth v. Clark, supra,* found that prejudicial error was committed and ordered a new trial. In *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 364 A.2d 454 (1976), a chief of police testified concerning a house where the defendant was observed. He stated that he had answered many complaints about the residence and that he had been to the defendant's house "numerous times previous to the incident in regard to other incidents." The Court refused many motions for

mistrial and told the jury to disregard the testimony about any complaints. We remanded for a new trial and stated at 243 Pa.Super. at 79, 80, 364 A.2d at 459:

Any doubt in the minds of the jury about appellant's prior criminal conduct was eradicated by the sheer number of times that the court was forced to give cautionary instructions, which only served to underscore the meaning of the prejudicial testimony.

In *Commonwealth v. Durant*, 268 Pa.Super. 191, 407 A.2d 1311 (1979), this Court, speaking through Judge Hester, concurring opinion by Spaeth, J. and dissenting opinion by Montgomery, J., found that the court below erred in not granting a mistrial based on the following testimony where the defense counsel asked the question on cross-examination of a prosecution witness.

Q. You knew where Ben lived, didn't you? You knew he lived out in Bressler?

A. Yes, but I didn't know he was here in the city. I didn't know he was here. *I didn't know he was out of jail, really.* I didn't know he was here until I seen him in my house.

268 Pa.Super. at 193, 407 A.2d 1311 (emphasis added).

Defense counsel moved for a mistrial but refused curative instructions. We stated at 268 Pa.Super. at 192–3, 407 A.2d at 1312:

We note that the response of Laura Tate can not be said to have been elicited by defense counsel. Her response could only result from a strong desire on her part to convict the appellant. Such a reference to appellant being in jail served only to convey to the jury the fact that appellant had been convicted of a crime in the past. A reference to prior criminal conduct is highly prejudicial to the appellant serving to effectively strip him of the presumption of innocence.

. . . . .

The further issue to be resolved is whether or not this is the type of prejudicial testimony which could have been

cured by prompt curative instructions by the court. *Because of the nature of the testimonial reference, we find that curative instructions would have been inadequate.* (Emphasis added.)

In *Commonwealth v. Laughman*, 306 Pa.Super. 269, 452 A.2d 548 (1982) we held that reference to the defendant's prior criminal conviction was so prejudicial that curative instruction could not remove the taint. The prosecutor asked the witness how he became acquainted with the defendant and he testified that he was in a restaurant when the appellant entered:

He had spit in my food and I looked down at the food and he came leaping over the table and I jumped up and we both grabbed butcher knives and we both were arrested, and he was found guilty and they left me go.

306 Pa.Super. at 271, 452 A.2d at 549.

We pointed out in *Commonwealth v. Laughman, supra,* that curative instructions may suffice to remove the taint of certain unintentional and innocuous references to prior criminal activities.

A second line of cases has found that a mistrial need not be granted notwithstanding reference to prior criminal offenses. In *Commonwealth v. Cannon*, 453 Pa. 389, 309 A.2d 384 (1973), the defendant was cross-examined by the Commonwealth and he was asked how long he lived on North Orianna Street. He answered that he didn't know and that his mother moved there while he was at Glen Mills School. He was then asked when he was at Glen Mills School, which is a Delaware County facility for juvenile offenders. The trial was in Philadelphia County. The Supreme Court held that the trial court did not err in refusing to grant a mistrial. "The allusions to Glen Mills were not elicited by the Commonwealth or the court but were offered *spontaneously* by the appellant during questioning which probed matters unrelated to his stay at Glen Mills." 453 Pa. at 394, 309 A.2d at 388. (Emphasis added).

In *Commonwealth v. Hill*, 237 Pa.Super. 543, 550, 353 A.2d 870, 875 (1975), a witness for the prosecution was

questioned by counsel for the defense. Mr. Burgess was one of the defendants and the witness testified as follows:

Q. Did you have occasion to speak with either of these gentlemen over the phone?

A. Yes, sir, I had a phone call.

Q. You had a phone call. Who was that call from?

A. He said it was Burgess.

Q. Burgess?

A. He said he was out of jail. (Emphasis added.)

This Court, speaking through Spaeth, J. stated at 237 Pa.Super. at 550-1, 353 A.2d at 875:

Appellants contend that this was an unsolicited answer that indicated that Burgess had been in jail at some time for the commission of another crime. *If Molettiere's answer had been to a question posed by the Commonwealth, the issue of mistrial would have been troublesome.*[5] However, the answer was to a question by the defense, and it is by no means clear that it was unsolicited....

Moreover, the trial judge gave a prompt curative instruction to the jury; and neither the prosecution nor the defense pursued the matter. In these circumstances the denial of the motion for mistrial will not be disturbed. (Emphasis added.)

In *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977), a witness for the Commonwealth testified that the defendant looked different although she was able to identify him. She said the defendant's face had begun to fill out and when asked what she meant she answered "well, if a man is without drugs for nine days he may gain a little weight." 470 Pa. at 174, 368 A.2d at 250. Cautionary instructions were given and the Supreme Court held that the trial court did not err in refusing to grant a mistrial. The Court speaking through Justice Nix, now Chief Justice Nix, stated at 470 Pa. at 178-9, 368 A.2d at 252:

*Although we reiterate the admonition to trial courts and prosecutors that they should exercise every possible*

*precaution against the introduction of improper references to prior unrelated criminal activities of the accused, we nevertheless recognize that there will be situations where, even with the greatest care, such evidence may inadvertently impregnate a trial. In such a case where it is evident that the introduction of the improper reference was not intentional and the nature of the comment was innocuous, immediate and effective curative instructions may remedy the error.*[4] We believe that in the instant case the prompt remedial action of the learned and experienced trial court eradicated the taint and assured the accused a fair trial.[9] (Emphasis added.)

The Supreme Court stated in *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (1981) citing *Commonwealth v. Williams, supra,* "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." 496 Pa. at 526–7, 437 A.2d at 1165.

The courts place emphasis on whether the reference to prior confinement, and therefore by implication a reference to a prior conviction, is responsive to the question. In *Commonwealth v. Markle,* 245 Pa.Super. 108, 369 A.2d 317 (1976), the prosecutor asked a witness on cross-examination how long he had known the defendant and he replied for about a year. The witness was then asked how long he knew the defendant before May 5, 1974, and he replied: "I didn't know him before May 5th—I had seen him before when I was in Graterford before, but I just passed him once or twice." A motion for mistrial was denied and cautionary instructions were immediately given. We held that the motion was properly denied and stated at 245 Pa.Super. at 114–5, 369 A.2d at 320:

*The answer given by the witness was not at all responsive to the question asked him.* The attorney for the Commonwealth was making no attempt to establish

**9.** It may be argued, however, that once the defendant is prejudiced by the reference to prior convictions, the absence of intent by the Commonwealth to elicit the improper remark is irrelevant.

appellant's connection, whatever it may have been, with Graterford prison or that he had a prior criminal record. There was no probing into appellant's incarceration there. The immediate curative instruction by the trial judge was in keeping with *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975). There was nothing dramatic or emotionally inflammatory such as might not enable a jury to follow the judge's instruction to disregard this answer of the witness. *Commonwealth v. Brown*, 444 Pa. 318, 282 A.2d 364 (1971). This isolated reference considered in the light of the trial judge's prompt corrective action could not be said to have prejudiced appellant's trial. See *Commonwealth v. Black*, 464 Pa. 604, 347 A.2d 705 (1975). (Emphasis added).

In *Commonwealth v. Whitman* a witness was asked how often she saw the defendant and she replied: "I had seen him about a week before that, he had just had his ... you know, come home from prison." 252 Pa.Super. 66, 77, 380 A.2d 1284, 1289 (1977). We held that there was no error in refusing to grant a mistrial, as no substantial prejudice existed. Relying on *Commonwealth v. Markle, supra*, the court stated at 252 Pa.Super. at 77, 380 A.2d at 1289 *"In both cases, the witness's answer was unresponsive;* in neither case was the remark elicited by the prosecution in an attempt to establish a prior record." (Emphasis added).

In *Commonwealth v. Rhodes*, 250 Pa.Super. 210, 378 A.2d 901 (1977) we held that an improper answer was not intentionally elicited by the Commonwealth, and that, in addition, the defendant himself testified that he had been in prison. On direct examination of a Commonwealth witness, the prosecutor brought out that the witness lived in Minnesota with the defendant and his wife. He was asked at 250 Pa.Super. at 219, 378 A.2d at 905:

Q. What happened in June of 1972?

A. Jerry and I broke up. We had a fight and I came back.

Q. Did he stay out there?

A. He sort of had to. He was in jail."

The court instructed the jury to disregard the answer and we held that it properly denied the motion for mistrial. We stated at 250 Pa.Super. at 219, 378 A.2d at 905:

> *Initially, there is no indication that the improper remark was intentionally elicited by the Commonwealth.* While Blouch's answer cannot be termed wholly unresponsive to the question, it is clear that a simple "yes" or "no" would have sufficed. More importantly, we believe the trial judge's immediate curative instructions were sufficient to expunge any taint and assure appellant a fair trial. (Emphasis added.)

The court also noted that the appellant testified and referred to his incarceration in Minnesota. We held that, *"In light of appellant's own testimony,* the strong evidence of guilt, and *the curative measures exercised by the trial judge, Blouch's testimony was harmless error beyond a reasonable doubt."* (Emphasis added.) 250 Pa.Super. at 219, 378 A.2d at 905. The thread that is woven through these cases which do not require a mistrial is that the reference to the defendant being confined in jail is not responsive to the question or it has not been elicited by the Commonwealth. In *Commonwealth v. Hargrove,* 296 Pa. Super. 525, 527, 442 A.2d 1175, 1176 (1982), a motion for mistrial was based *on* the following testimony of a prosecution witness on *cross-examination by the defense:*

Q. And you were staying with Curtis?

A. No, I was staying at my sister's house.

Q. Were you seeing Curtis alot while you were here?

A. I only seen him about once or twice *because I think he had just got out of jail somewhere.* (Emphasis added.)

The defendant's motion for mistrial was denied and cautionary instructions were immediately given. We held that the motion for mistrial was properly denied. In his curative instructions, the judge told the jury to ignore the reference to the defendant being in jail. "As a matter of fact, it is not correct that Mr. Hargrave had just gotten out of jail. He was not in jail." 296 Pa.Super. at 527, 442 A.2d at 1176.

The court further stated at 296 Pa.Super. at 528, 442 A.2d at 1176:

In the instant case, the question answered by the witness had been asked by defense counsel. *There was no basis for concluding, and appellant does not contend, that the response of the witness was an intentional attempt to prejudice him or that the representatives of the Commonwealth were in any way responsible for it. The answer of the witness, in fact, was unresponsive to the question asked.* She had not been uncooperative or hostile at any other point during the questioning. Cf. *Commonwealth v. Durant,* 268 Pa.Superior Ct. 191, 407 A.2d 1311 (1979). *The remark was unsolicited* and isolated, and was of the type which "[fell] far short of depriving appellant of a fair and impartial trial." (Emphasis added.)

In *Commonwealth v. Gilliard,* 300 Pa.Super. 469, 474, 446 A.2d 951, 953 (1982), defense counsel asked a prosecution witness, who was a detective, on cross-examination, the following question:

DEFENSE COUNSEL: Now isn't it true Detective Miller that he was in the Glynn County cell room as a result of your request to the Brunswick County police to detain him for you as a result of this warrant?

WITNESS: It was on several different charges that he was there, sir. Mine plus—

The answer was cut off. The trial judge offered to give cautionary instructions which were refused by defense counsel for tactical reasons. We held that a new trial was not required and stated at 300 Pa.Super. at 475, 446 A.2d at 954:

*Also, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977). *We find that the witness' answer was not elicited by the Commonwealth but rather was invited by the question posed by counsel for the appellant.* (Emphasis added.)

228

As pointed out in *Commonwealth v. Bowermaster, supra,* there is no *per se* rule for requiring a new trial for every reference to prior criminal activity. Our scope of review is to determine whether the trial court abused its discretion in refusing to grant a mistrial based on the prosecutor's question and the answer by Mr. Elliot. *Commonwealth v. Claypool,* 317 Pa.Super. 320, 464 A.2d 341 (1983). In *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 450, 444 A.2d 115, 118 (1982), the objected to testimony was by a prosecution witness on direct examination as follows:

Q. Were you questioned by the police?

A. I was, sir.

Q. Did you initially tell them what you have told us here today at first?

A. No sir, I told them that it was mine and that Mr. Bowermaster was, in fact, hitchhiking.

Q. Why did you tell them that?

A. Well, *this is my first time and I figured that,* you know, well, I just figured *they would be easier on me than they would on him basically.* (Emphasis in original.)

We stated at 297 Pa.Super. at 451, 444 A.2d at 118:

*Moreover, there is no indication that the district attorney was attempting to elicit a response which would prejudice the appellant by suggesting prior criminal activity on his part.* On the contrary, it is not unreasonable to assume that the district attorney "sought only to minimize the harmful effect of any possible impeachment of Bevan by the defense, by having Bevan explain the inconsistency between his trial testimony and his initial statement to the police during his direct testimony." (Emphasis added.)

█ Although there is no *per se* rule concerning the admission of evidence pertaining to prior convictions, certain principles may be distilled from the cases. Reference to a criminal defendant having been in jail clearly and

unmistakably indicates a prior criminal conviction and the remark is prejudicial. *Commonwealth v. Clark, supra.* When such a remark is introduced, a mistrial need not necessarily be granted if there are other factors to satisfy the requirement that the appellant receive a fair trial. A crucial consideration is whether the remark was intentionally elicited by the Commonwealth. *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (1981); *Commonwealth v. Rhodes,* 250 Pa.Super. 210, 378 A.2d 901 (1977); *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 444 A.2d 115 (1982); *Commonwealth v. Hargrove,* 296 Pa.Super. 525, 442 A.2d 1175 (1982); *Commonwealth v. Gilliard,* 300 Pa.Super. 469, 446 A.2d 951 (1982). A corollary to this is whether the answer is responsive to the question asked. *Commonwealth v. Markle,* 245 Pa.Super. 108, 369 A.2d 317 (1976); *Commonwealth v. Whitman,* 252 Pa.Super. 66, 380 A.2d 1284 (1977). In addition, the question of whether curative instructions were given is of great import. *Commonwealth v. Hargrove,* 296 Pa.Super. 525, 442 A.2d 1175 (1982); *Commonwealth v. Rhodes,* 250 Pa.Super. 210, 378 A.2d 901 (1977). In reaching our conclusion we are guided by Chief Justice Nix's remarks in *Commonwealth v. Williams,* 470 Pa. at 178, 368 A.2d at 252:

Although we reiterate the admonition to trial courts and prosecutors that they should exercise every possible precaution against the introduction of improper references to prior unrelated criminal activities of the accused, we nevertheless recognize that there will be situations where, even with the greatest care, such evidence may inadvertently impregnate a trial.

In the case before us the question which brought the prejudicial response was asked by the prosecutor and the answer was completely responsive. We do not have the situation where the defendant's counsel elicited a response that indicated a prior criminal conduct, or one where the answer is unresponsive to the question. The assistant district attorney asked the prosecution witness on direct examination how he met the defendant. The court in its cautionary instructions in a sense etched the answer in the

minds of the jury when it instructed the jury to "disregard the last answer as to where the witness met the defendant." What is extremely troubling in this case is that there was no need for the prosecution to ask the witness how he met the appellant. The witness testified that he had known the appellant for ten years. It was completely irrelevant where he met the appellant. The prosecutor's question of the witness raises the further issue of whether the question was asked with the intention of eliciting the prejudicial answer that the witness met the appellant in jail. If it was not so asked, then why did not the prosecutor inquire into what the answer would be before the question was asked. We have the situation of the prosecutor asking a witness who was then confined to jail, an irrelevant question as to where he met the appellant.

The Commonwealth argues that Mr. Elliot was mistaken about meeting the appellant in prison because the appellant testified at the hearing on alleged ineffectiveness of counsel that he did not meet Mr. Elliot for the first time in jail. This argument misses the point. The issue is not whether or not Mr. Elliot's testimony is correct, but whether it prejudices the appellant to the extent that he was denied a fair trial.

This case is most difficult. As Judge Spaeth, now President Judge Spaeth, pointed out in *Commonwealth v. Hill,* 237 Pa.Super. 543, 550, 353 A.2d 870, 875, where an unsolicited answer to a question by defense counsel on cross-examination elicited the answer that a defendant told him that he was out of jail,: *"If [the witness's] answer had been to a question posed by the Commonwealth, the issue of mistrial would have been troublesome."* (Emphasis added.)

*Commonwealth v. Rhodes, supra,* involved the question by the prosecutor of a Commonwealth witness as to whether the defendant remained in Minnesota. The witness replied that "He sort of had to. He was in jail." 250 Pa.Super. at 219, 378 A.2d at 905. Cautionary instructions were given and we held that a mistrial was properly denied. However, the distinguishing feature in *Rhodes* is that the appellant himself testified and referred on two occasions

that he was in jail in Minnesota. His own testimony removed any possible prejudice resulting from the reference to being in jail. We also determined that the appellant did not take the stand to testify as a result of the reference to his being in jail in Minnesota. As we know, in our case, the appellant did not testify.

In this case, where the prosecution witness was himself confined to jail at the time of his testimony, the prosecutor did not exercise proper precaution in asking the witness, who said he knew the appellant for ten years, an irrelevant question as to where he met the appellant. The answer was completely responsive to the question, and since the prosecutor apparently did not know what the answer would be, he ran a substantial risk that the answer would be prejudicial to the appellant. In the circumstances of this case, the curative instructions did not remove the prejudice suffered by the appellant and he was denied a fair trial. If we found the error to be harmless, we would almost totally abrogate the rule against admission of evidence of prior convictions.

Appellant raises other issues, but since we remand for a new trial they need not be discussed.

Judgment of sentence reversed and case remanded for new trial. Jurisdiction relinquished.