502 A.2d 253

**COMMONWEALTH of Pennsylvania**

v.

**Robert BALDWIN, Appellant.**

Superior Court of Pennsylvania.

Argued March 26, 1985.

Decided Dec. 6, 1985.

370

Joseph B. Vanwyk, Media, for appellant.

Dennis C. McAndrews, Assistant District Attorney, Wayne, for Com., appellee.

Before BECK, POPOVICH and TROMMER*, JJ.

BECK, Judge:

Appellant Robert Baldwin appeals from judgment of sentence entered on convictions of rape, incest and corrupting the morals of a child. The charges arose out of a course of conduct in which appellant forced his teenage daughter to engage in intercourse and other sexual activity with him.

Baldwin raises the following issues on appeal:

(1) The trial court erred in allowing the Commonwealth to call as an expert witness a social worker who had counseled the victim and who testified concerning patterns of intrafamilial sexual abuse;

(2) Appellant was denied a fair trial by the Commonwealth's withholding of exculpatory evidence despite appellant's requests for disclosure;

(3) Trial counsel was ineffective for not attempting to present to the jury evidence of sexual activity between the victim and her stepbrother to explain away the social worker's testimony and/or to utilize such evidence to argue that the social worker's testimony should not be admitted; and

(4) An evidentiary hearing is necessary to determine whether counsel was ineffective for failing to subpoena and review certain agency records, failing to recall certain Commonwealth witnesses for further cross-examination, failing to interview certain other witnesses and failing to accept a mistrial offered by the trial court.

* Judge Evelyn R. Trommer, Senior Judge of the Court of Common Pleas of Philadelphia, is sitting by designation.

We affirm. The trial court's opinion at pp. 8–12 adequately addresses appellant's issue (2). We therefore address only issues (1), (3) and (4) in this opinion.

## Social Worker's Testimony

At trial the Commonwealth called as an expert witness Ralph Battinieri, a social worker with the Delaware County Department of Children and Youth Services ("CYS"). Battinieri had counseled the victim after she had left her home and reported the incidents of abuse, but he did not testify specifically about the victim herself or his work with her. Rather, his direct testimony[1] was framed in general terms and was intended to explain the dynamics of intra-family sexual abuse and the behavior patterns of the victims. Battinieri testified regarding the effects of the incestuous relationship on the victim's self-esteem, the psychological forces which cause the victim to keep the incest a secret for a long time, and why victims are often unable to recall exact dates or times or describe specific incidents in detail.

On appeal, appellant does not challenge Battinieri's qualifications in the field of child sexual abuse. Rather, appellant argues first that the evidence is irrelevant and secondly that Mr. Battinieri effectively testified that the victim was a credible witness, thereby usurping the jury's credibility-determining function and prejudicially labeling the witness as an incest victim. The Commonwealth contends that Battinieri did not refer to the victim herself as an incest victim or comment on her credibility and that his testimony was relevant and properly admitted because it assisted the jury in understanding and evaluating the victim's testimony.

■ We agree with the Commonwealth and hold that the testimony of a properly qualified expert concerning the psychological dynamics of incest and the behavioral patterns of incest victims is admissible in prosecutions for

1. On cross-examination, defense counsel questioned Battinieri in a way designed to elicit his views on how he would decide if a particular victim were telling the truth. Nevertheless, Battinieri refrained from expressing any opinions on the credibility of the particular victim in the instant case.

incest and/or related crimes because the evidence is relevant and is a proper subject for expert testimony.

■ Appellant's two grounds of objection to Battinieri's testimony are somewhat inconsistent. On the one hand, appellant argues that the evidence is irrelevant because it consisted of generalizations about victim behavior which did not bear on the particular factual allegations of the instant case. On the other hand, in contending that the social worker impermissibly usurped the jury's credibility-assessing role, appellant is not claiming that the evidence is irrelevant, but rather that it is in a sense *too* relevant, because it prejudices the jury's resolution of an undeniably material issue, the victim's credibility.

■ "Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain*, 324 Pa.Super. 456, 462, 471 A.2d 1246, 1249 (1984). Under this standard there can be no question that Battinieri's expert testimony is relevant. The evidence does tend to make material facts more probable and advance the inquiry because the jury can infer that the gaps and inconsistencies in the victim's testimony stem from the psychological dynamics of incest rather than from any fabrication or fantasy. We believe the real issue here is whether the evidence, although relevant, is prejudicial because it is an improper comment on credibility or not a proper subject for expert testimony.

The admissibility of expert testimony on the dynamics of child sexual abuse and the behavioral patterns of victims has been addressed only peripherally by our courts. In *Commonwealth v. Stago*, 267 Pa.Super. 90, 406 A.2d 533 (1979), the defendant was convicted of rape, incest and other offenses on evidence that he sexually abused his daughter. Noting that the defendant "contend[ed] that the court erred in allowing [the victim's] treating psychologist to give his opinion of [her] credibility," this Court held,

"Our review of the record shows that the psychologist gave no such opinion; accordingly, this contention is without merit." *Id.*, 324 Pa.Superior Ct. at 96, 406 A.2d at 535. However, the opinion contains no further discussion of the issue and does not reveal the substance of the psychologist's testimony beyond stating that he "testified that child-victims of incest frequently felt depressed, guilty and angry and required psychiatric care and hospitalization." *Id.*

In *Commonwealth v. Gaerttner*, 335 Pa.Super. 203, 484 A.2d 92 (1984), also a case involving child sexual abuse, the victim was mentally retarded, and a clinical psychologist testified regarding her ability to fabricate a story and the way she perceived and remembered events. In deciding a claim that defense counsel was not ineffective for not challenging the competency of the complaining witness, we noted that "[t]he testimony goes not to the witness' competency to testify but to her credibility as a witness," *id.*, 335 Pa.Superior Ct. at 215, 484 A.2d at 99, and there is no suggestion that the testimony was objectionable because it went to the victim's credibility. However, in *Gaerttner* this Court was not asked to rule on the admissibility of the psychologist's testimony, and in any case the psychologist's testimony appears to be concerned with the victim's retardation more than the effects of the sexual assault.

The courts of several other jurisdictions have considered the issue, though, and have held that expert testimony regarding the behavior patterns of child sexual abuse victims was properly admitted. *See, e.g., People v. Dunnahoo,* 152 Cal.App.3d 561, 199 Cal.Rptr. 796 (1984); *State v. Kim,* 64 Haw. 598, 645 P.2d 1330 (1982); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983); *State v. Haseltine,* 120 Wis.2d 92, 352 N.W.2d 673 (1984). Other courts have admitted similar expert testimony on "rape trauma syndrome" to assist the jury in understanding the dynamics of rape; *see, e.g., State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); *State v. Staples,* 120 N.H. 278, 415 A.2d 320 (1980).[2]

**2.** *Contra, People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984), *State v. Saldana,* 324 N.W.2d 227 (Minn.1982). One

*See also State v. Conlogue,* 474 A.2d 167 (Me.1984) (expert testimony on "battered child syndrome" and patterns of child abuse within family admissible to impeach credibility of mother's retraction of confession that she had abused her child); *State v. Kelly,* 97 N.J. 178, 478 A.2d 364 (1984) ("battered woman syndrome" proper subject for expert testimony where issue was whether defendant wife could establish claim of self-defense in prosecution for killing husband).

■ The foregoing decisions support our conclusion that expert testimony such as that offered by Battinieri does not improperly invade the jury's prerogative. As one commentator has noted:

> The argument that such psychological testimony is prejudicial because it bears on the credibility of a witness, and thus invades the province of the jury, is simply wrong. Expert testimony cannot "invade the province of the jury" unless the jury is instructed that it must agree with the expert's assessment.

T. Massaro, *Experts, Psychology, Credibility and Rape* at 443. Of course, no such instruction was given in this case. Neither did Battinieri expressly comment on the victim's credibility.[3] The fact that the jury, if it believes the expert's testimony, may draw inferences which would tend to bolster the victim's credibility does not make the evidence inadmissible. It is a commonplace fact that the testimony of one witness may tend to corroborate another. Far from being improper, this is normal and is good trial strategy. *See Middleton,* 294 Or. at 435, 657 P.2d at 1219 ("Much expert testimony will tend to show that another witness

commentator has observed that courts have generally been more receptive to this type of expert testimony in child sexual assault cases than in cases involving adult rape. *See* T. Massaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn.L.Rev. 395, 467 (1985) (hereinafter cited as Massaro, *Experts, Psychology, Credibility, and Rape* ).

3. In *State v. Kim,* the Hawaii court permitted the psychiatrist to testify whether he believed the child victim. We need not decide in this case whether such testimony would be admissible.

either is or is not telling the truth.... This, by itself, will not render evidence inadmissible")[4]. In other words, so long as the expert does not render an opinion on the accuracy of the victim's recitation of facts, his or her general testimony on the dynamics of sexual abuse does not prejudice the jury.[5]

■ We also hold that the behavioral and psychological characteristics of child sexual abuse victims are proper subjects for expert testimony. Expert testimony is permitted as an aid to the jury "where the subject beyond the knowledge or experience of the average layman." *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). The trial court found that the reactions and behavior of a victim of incest are not matters of common knowledge and experience. We agree. The emotional trauma to which the child victim of sexual abuse has been subjected causes the victim to react and behave in a different manner from many other crime victims, expecially when the sexual abuse victim is forced to testify to the acts in open court. The child [6] is likely to be reluctant to testify against the defendant who is

4. In *Middleton*, unlike the instant case, the expert was permitted to testify that the victim's behavior fit the pattern. It is therefore even clearer in the instant case that the expert did not invade the province of the jury because all the inferences were left for the jury to draw. We do not decide whether it would be permissible in Pennsylvania for the expert to draw the inference of consistency on the stand as was done in *Middleton*.

5. *Compare People v. Roscoe*, 168 Cal.App.3d 1093, 215 Cal.Rptr. 45, 37 Crim.L.Rptr. 2259 (1985). In *Roscoe*, the prosecution called a clinical psychologist who "testif[ied] in detail about the specific facts in the case at hand" and stated his opinion based in part on his analysis of those facts that the complainant was a victim of child molestation. The court ruled this testimony inadmissible, holding that it was distinguishable from opinion testimony based on the scientific literature and the expert's experience with molestation victims in general. For example, the court stated, an expert could properly testify that "as a class victims of molestation typically make poor witnesses, and are reluctant to disclose or discuss the sordid episodes."

6. Although both boys and girls are victims of child sexual abuse, a disproportionate number of the victims are female: "One in five females and one in eleven males are sexually victimized as children." Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv.L.Rev. 806 (1985), *citing* D. Finkelhor, *Sexually Victimized Children* 53 (1979).

a parent or other family member and indeed may be under the pressure from other members of the family to recant the allegations. The perpetrator of the abuse may also have used threats or other forms of coercion to enforce the secrecy of the relationship. Moreover, the abuse often begins at an early age and continues for a long period of time, so the child is likely to be relating events which occurred some time in the past and which the child may not have completely understood while they were happening.

Courts and commentators alike have observed that for these reasons child sexual abuse victims often have difficulty remembering dates and times or describing details of sexual acts, and are reluctant witnesses, sometimes refusing to testify or recanting prior allegations out of fear or coercion. *See State v. Pettit,* 66 Or.App. 575, 675 P.2d 183 (1984); *State v. Middleton, supra;* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv.L.Rev. 806 (1985); *Corroboration Requisite Seen Tilting the Scales Against Child Victims,* The Washington Post, June 8, 1984, A16; J. Mann, *Manhandled,* The Washington Post, Jan. 11, 1984, B1. In *Middleton* the Oregon court explained succinctly how this type of expert testimony assists the jury in understanding and evaluating the evidence:

> If a complaining witness in a burglary trial, after making the initial report, denied several times before testifying at trial that the crime happened, the jury would have good reason to doubt seriously her credibility at any time. However, in this instance we are concerned with a child who states she has been the victim of sexual abuse by a member of her family. The experts testified that in this situation the young victim often feels guilty about testifying against someone she loves and wonders if she is doing the right thing in so testifying. It would be useful to the jury to know that not just the victim but many child victims are ambivalent about the forcefulness with which they want to pursue the complaint.... Explaining this superficially bizarre behavior by identifying its emotional

antecedents could help the jury better assess the witness's credibility.

*Middleton,* 294 Or. at 435–36, 657 P.2d at 1219–20. We therefore hold that the trial court did not err in admitting the expert testimony of Ralph Battinieri.

### *Ineffectiveness of Counsel—Victim's Prior Sexual Activity*

Appellant claims that trial counsel was ineffective for not making use of evidence that the victim engaged in sexual activity with her stepbrother. The gist of appellant's argument appears to be that trial counsel should have offered this evidence either as an alternative explanation of the victim's behavior patterns to which Mr. Battinieri testified or as a further reason why Mr. Battinieri's testimony should not be admitted.

 It is axiomatic that counsel will not be held ineffective for failing to assert a baseless claim. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). We hold that appellant's claim is meritless because the Rape Shield Law, 18 Pa.C.S. § 3104(a), bars the admission of evidence of prior sexual activity between the victim and the stepbrother. The Rape Shield Law provides:

(a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

 Appellant argues that evidence of a sexual relationship between the victim and her stepbrother would nevertheless be admissible under *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985). In *Black* the defendant was accused of engaging in incestuous sexual activity with his daughter. The daughter first made the allegations of

sexual abuse after violent arguments between her fifteen-year-old brother and the defendant culminated in the brother leaving the family home. The defendant sought to introduce evidence of an ongoing consensual sexual relationship between the daughter and her brother. The defendant contended that the admission of this evidence was necessary to reveal the daughter's bias and motive to falsify, because it tended to show she had a reason to retaliate against her father for forcing her brother to leave home. This Court agreed, holding that the Confrontation Clause of the Sixth Amendment to the Constitution required that the Rape Shield Law not be used to exclude relevant evidence which tended to show the prosecuting witness' bias or attack her credibility, so long as the probative value of such evidence was not outweighed by its prejudicial effects.

■ The proffered evidence in the instant case does not fall within the ambit of *Black*. There is simply no link between the alleged sexual activity with the stepbrother and any possible reason for the victim to be biased against appellant. There is no evidence that appellant attempted in any way to come between the victim and her stepbrother or that appellant even knew of any sexual contact between them. Appellant claims that the victim first accused him after her efforts to run away to Florida with her boyfriend (not the stepbrother) were thwarted. This sequence of events may indeed suggest a source of bias of the victim against appellant. However, we fail to see how evidence of unrelated sexual activity with the stepbrother is relevant to a claim that the victim was biased because appellant prevented her from running away to Florida with her boyfriend. *Black* does not allow the use of irrelevant evidence to show bias. Therefore we hold that counsel was not ineffective for failing to introduce this inadmissible evidence.

Moreover, as the Commonwealth correctly notes, the defense did call the stepbrother and elicited testimony from him to the effect that nothing untoward of sexual nature

occurred in the Baldwin home. Appellant claims that this avenue was chosen "only ... after it became evident that defense counsel would not be permitted to explore the relationship between [the victim] and her stepbrother." Supplemental Brief for Appellant at 4. However, the standard against which we measure counsel's stewardship is not whether in hindsight other alternatives were available, but whether the course of action which *was* taken had a reasonable basis designed to effectuate the client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Clearly it was reasonable for trial counsel to elicit testimony from the stepbrother, whose bedroom adjoined that of the victim, that he knew of no unusual sexual activity in the home.

### *Ineffectiveness of Counsel—Miscellaneous Claims*

█ Appellant urges that we remand for an evidentiary hearing to determine whether trial counsel was ineffective for a variety of reasons set forth in appellant's assignment of error (4). Where it is clear from the record that allegations of ineffective assistance of counsel are meritless, we need not remand for an evidentiary hearing. *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984). We hold that the allegations of ineffectiveness in assignment of error (4) are demonstrably meritless without need for a remand.

█ Appellant claims counsel should have subpoenaed the victim's CYS file prior to trial and should have recalled certain witnesses once the defense did gain access to the file. Appellant also claims trial counsel should have interviewed certain other witnesses and used them to impeach the victim's credibility. These claims are little more than bare allegations. There is not even a preliminary showing or indication of what in the CYS file would have been helpful to appellant. Appellant also fails to show with any specificity how calling or recalling the various witnesses would have materially assisted his case. *See Commonwealth v. Broadwater*, 330 Pa.Super. 234, 246, 479 A.2d

526, 533 (1984) (defendant must support ineffectiveness claim based on failure to call witnesses with showing "that the missing testimony would have been helpful"). The defendant bears the burden of establishing his claim of ineffectiveness. *Commonwealth v. Howard,* 324 Pa.Super. 443, 471 A.2d 1239 (1984). "[M]ere allegations of ineffectiveness standing alone on direct appeal will not warrant an evidentiary hearing if this Court is not presented with facts sufficient to support the claim." *Commonwealth v. Cottman,* 327 Pa.Super. 453, 460, 476 A.2d 40, 43 (1984); *see also Clemmons.* Appellant failed to make the showing which would entitle him to an evidentiary hearing.[7]

▪ Finally, appellant's claim that trial counsel was ineffective in refusing to accept a mistrial offered by the trial court is also meritless. When the jury indicated to the trial judge that it was having difficulty reaching a verdict, the judge discussed with counsel the possibility of granting a mistrial rather than sending the jury back for further deliberation. The record indicates, though, that *appellant himself* instructed counsel to tell the court that he did not desire a mistrial but rather wanted the jury to deliberate further. Since an acquittal is preferable to a "hung jury" mistrial after which appellant could be retried[8], it was surely reasonable to ask that the jury be allowed to deliberate further in the hope that the verdict would be not guilty. Therefore counsel's effectiveness cannot be faulted.

Having found no reversible error we affirm the judgment of sentence.

7. We further note that trial counsel did call several of the witnesses listed as those who "could have been used to impeach the victim's testimony by pointing out several inconsistencies in her testimony" (Appellant's Brief at 34). Jenny Newlin, Walter Ruber Jr. and Bruce Brinton all testified at trial, and their testimony on many points was inconsistent with that of the victim. Other witnesses were called who testified in a similar vein. We therefore fail to see how trial counsel's representation was deficient in this respect.

8. *See, e.g., Commonwealth v. Mehmeti,* 501 Pa. 589, 462 A.2d 657 (1983); *Commonwealth v. Smith,* 324 Pa.Super. 156, 471 A.2d 510 (1984).