568 A.2d 247

COMMONWEALTH of Pennsylvania, Appellant,

v.

Gerard P. CEPULL.

Superior Court of Pennsylvania.

Argued Oct. 13, 1989.

Filed Jan. 3, 1990.

Petition for Allowance of Appeal Denied June 11, 1990.

John L. Brown Jr., Asst. Dist. Atty., Beaver, for Com., appellant.

Debra A. Genevie, Beaver Falls, for appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from the January 25, 1989 Order of Court, granting appellee's motion for a new trial. The trial court en banc granted the motion because it found error in allowing an expert witness to testify, over objection, "as to the general condition known as 'rape trauma syndrome.'" Slip Op., Per Curiam, 1/25/89, p. 1.

Appellee was charged by information and convicted of rape by forcible compulsion [1] and rape by threat of forcible compulsion.[2] The incident which gave rise to the charges occurred in August 1983. The facts are as follows. The victim, not yet eleven years old at the time, went to bed by herself the evening of the incident. Shortly thereafter, appellee, who was a family friend, went up to her attic bedroom, turned on the stereo, and lay down beside her in bed. Victim's numerous attempts to face the wall and fall asleep were forcibly rebuffed by appellee. While forcing his arm under victim's neck, appellee removed his underwear and told the victim to take off her pajamas, which she eventually did. Despite the victim's protestations, appellee started rubbing her stomach, back, chest and legs, and after he removed her underwear, he started rubbing her private parts. The victim once again tried to get away, but appellee exerted more strength. At this point, the victim felt

1. 18 Pa.C.S. § 3121(1).
2. 18 Pa.C.S. § 3121(2).

something going inside her, which caused her extreme pain. She tried to call for her mother, but appellee pulled her tight and covered her mouth, letting only the last part of her call out. The victim felt a sensation as if appellee had urinated on her, and then appellee pushed her toward the wall. As the victim got up to leave, appellee grabbed her arm and told her everything was her fault, and it would hurt her parents if she ever revealed any of what had transpired to anyone else. Appellee released the victim, who immediately went to the bathroom to clean herself and found she was bleeding. The victim did not tell her mother, but because she felt safer with her parents, she asked if she could sleep with them. The next day, her mother noticed the bleeding, and she mentioned it to the victim's grandmother a day later.

Subsequently, the victim became very withdrawn, quiet and unhappy according to her mother, and by her own admission, she began to hate men. After her father died, her mother began dating another man, and the victim disliked him. Finally two-and-one-half years (2½) after the incident, the victim confided in a neighbor what had happened and later told her mother.

At trial, the Commonwealth introduced Diane McQuillen as an expert witness. The prosecutor offered McQuillen would be testifying as to the general condition of "rape trauma syndrome," which is evidenced by a marked pattern including withdrawal, insecurity, attempts to avoid contact with members of the sex who inflicted the crime and reluctance to tell anyone about the crime. Although appellee objected, the trial court permitted McQuillen's generalized testimony, but after the trial and upon appellee's motion for a new trial, the court granted a new trial based on the inadmissibility of McQuillen's testimony.

Commonwealth/appellant contends the trial court erred in reversing itself to declare the expert testimony on behalf of the Commonwealth was inadmissible. Expert testimony is admissible in all cases, civil and criminal alike, where it involves explanations and inferences not within the range of

ordinary training, knowledge, intelligence and experience. *Commonwealth v. Leslie,* 424 Pa. 331, 227 A.2d 900 (1967). The law regarding testimony by an expert relating to the capacity of a child witness to tell the truth in an abuse case is clearly stated and follows a distinct pattern in Pennsylvania and a majority of the jurisdictions throughout the nation. Expert testimony in sexual abuse cases frequently relates to bolstering the credibility of child sexual abuse victims by describing behavior of sexually abused children, which may be similar to that exhibited by the victim in the case, or by confirming, through recitation of reports and studies, the general reliability of victim reports of sexual abuse.

In awarding a new trial, the trial court primarily relied on two cases stating the general rule, *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986) and *Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988), to conclude the expert's testimony was inadmissible because it improperly encroached on the jury's function of determining the credibility of a witness. In *Seese,* the Supreme Court held expert testimony as to the general credibility of eight-year-old children who claim to have been sexually abused encroached on the province of the jury and as such was inadmissible. The Supreme Court, in *Gallagher,* held expert testimony regarding the effect of "rape trauma syndrome" on the victim specifically and her ability to identify her assailant four years after the attack but not two weeks after the attack improperly enhanced the victim's credibility in the eyes of the jury and thus was inadmissible.

Upon closer examination, the cases relied on by the trial court are to some degree distinguishable from the instant case. In *Seese,* the testimony elicited from the expert was a direct attempt to establish the victim's credibility. Specifically, the expert in *Seese* testified "[i]t is very unusual that a child would lie about sexual abuse.... They don't know what to say. It's not part of the life experience, so everything they say is something they have seen or experienced. It would be very unusual for them to lie." *Seese, supra,*

512 Pa. at 442, 517 A.2d at 921. To the extent the testimony here concerned only a generalized description of rape trauma syndrome, it did not conflict with *Seese*. Appellee even concedes *Seese* is not on point because in the case at bar McQuillen "did not directly say the victim was not lying." (Appellee brief, p. 14.) Since the controlling factor for the Supreme Court's decision in *Seese* was that the expert *actually* testified child sexual abuse victims do not lie, it is not directly applicable here. However, a close review of the record establishes the Commonwealth did introduce evidence which we believe invaded the province of the jury by quoting studies establishing the extent to which rape victims lie or tell the truth (T.T. 1/13/88, pp. 413–414).

We can distinguish *Gallagher* because the expert in that case testified she examined the victim, diagnosed the victim as suffering from rape trauma syndrome and believed the syndrome affected the victim's ability to identify the assailant, which improperly enhanced the victim's credibility in the eyes of the jury, which was impermissible. Here, McQuillen never examined the victim and never diagnosed her as suffering from rape trauma syndrome. Instead, McQuillen merely testified as to the generalized symptoms of the syndrome. In fact under cross-examination, McQuillen also described similar behavioral patterns resulting not from rape but from the death or terminal illness of a loved one. The father, in the instant case, was suffering from juvenile diabetes at the time of the alleged rape and subsequently died from the disease. As such, the expert's testimony did not improperly enhance the victim's credibility because the jury still had to pass on the credibility of the expert witness and whether this victim suffered from rape trauma syndrome or if the victim's behavioral changes resulted not from rape but from the agony of watching her father slowly die. Clearly, the jury function of determining credibility was still intact in this respect, however, as stated above, the balance shifted and the line was crossed when the expert testified as to studies which established that victims of rape lie only in three per cent of the cases.

Expert testimony is permitted as an aid to the jury where the subject is beyond the knowledge or experience of the average layman. *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976). Consequently, we find McQuillen's *initial* testimony was a proper comment and subject for expert testimony, without invasion of the jury's function of determining credibility. However, we must depart from the Commonwealth's contention of relevancy as it relates to the testimony concerning the studies quoted by McQuillen as follows:

THE COURT: Let's have the question.

BY MR. BROWN:

Q  Are you familiar with the studies that were done by Harry O'Reilly in New York City in regards to a number of founded and unfounded rape and sexual assault cases?

A  Yes, I am.

Q  What were the results of those studies?

THE COURT: Just a moment.

MR. HUDACSEK: This is my objection. The best evidence would be the studies, themselves, Your Honor.

THE COURT: We think you opened the door, Mr. Hudacsek. The objection is overruled.

MR. HUDACSEK: Okay. Whatever you rule, sir.

BY MR. BROWN:

(continuing)

A  According to that study, Mr. O'Reilly found that less than 3 percent of all women and children turned in false reports for rape and that that's the same statistic that they have as for false reportings for most other felony crimes, such as robbery and burglary.

Q  Now, were you familiar with a study also conducted by the F.B.I. on the same subject?

A  Yes, I am.

Q  What was the result of that study?

MR. HUDACSEK: Same objection, Your Honor.

THE COURT: Overruled.

BY MR. BROWN:

(continuing)

A   The F.B.I. study paralleled that of the study conduct-
ed by Mr. O'Reilly, and their study was a nationwide
study, and they found only 3 percent of all women who
reported being sexually assaulted had in fact lied or
made up a story about that; and again, it was the same
rate of false reports as they had for any other crime,
such as robbery or burglary.

T.T. at 413–414.

While the trial court found the victim's testimony alone
would convict appellee (Slip Op., Reed, J., p. 2), the testimo-
ny by the expert Ms. McQuillen, concerning studies which
established that only three per cent of rape victims lie, in
conjunction with the extensive testimony about the rape
trauma syndrome, could have had a substantial prejudicial
effect on the jury's deliberations, in that they could have
accepted the testimony by the expert as conclusive of defen-
dant's guilt without making an independent determination
of the victim's credibility.  At this stage of the development
in Pennsylvania law, since the rape trauma syndrome has
not been documented as a diagnostic tool having probative
value, as is the case with the "battered child"—"battered
wife" syndromes, its use in any fashion will create appeal-
able issues.  In making an analogy between the "battered
child"—"battered wife" syndromes and the "sexual accom-
modation" syndrome (which has the same elements as rape
trauma syndrome), *Commonwealth v. Baldwin*, 348 Pa.Su-
per. 368, 502 A.2d 253 (1983), as relied upon by the Com-
monwealth, is in error and has been repudiated by implica-
tion. *See Gallagher, supra.*  It is noted that in *Baldwin* all
authority for this analysis was derived from case law of
states other than Pennsylvania.

For the above reasons, the trial court was correct in
granting a new trial, and we affirm that decision.

Order affirmed.

Jurisdiction relinquished.

WIEAND, J., concurs in the result.