747 A.2d 341

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Peter BALODIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Feb. 2, 1999.

Decided Feb. 24, 2000.

568

Norris E. Gelman, Philadelphia, Harvey Sernovitz, Trevose, for Peter Balodis.

Mary Killinger Asst. Dist. Atty., Patricia E. Coonahan, Dist. Atty., for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CAPPY, Justice.

The question before the court is whether trial counsel was ineffective for failing to preserve for appellate review an objection to the admissibility of testimony by the Commonwealth's expert witness, which improperly bolstered the credibility of the victim. For the following reasons we find that counsel was ineffective, and that accordingly, the decision of the Superior Court must be reversed and the matter remanded for a new trial.

The instant case arose following the allegations of ten year old Jimmy Rosser that he had been sexually molested by appellant on numerous occasions in 1988 and 1989. According to Jimmy, the acts of sexual abuse took place at the Harley Hotel in Montgomery County, Pennsylvania. (Notes of Testimony "N.T." p. 21). At the time these acts allegedly occurred, appellant owned the hotel and Jimmy resided there with his mother and younger brother. (N.T. pp. 19–20). Some time in 1989 Jimmy was moved to a foster home. While in the foster home, Jimmy watched a film on "good touch bad touch". (N.T. p. 27). After the film, several of the other foster children admitted being victimized by "bad touch". Jimmy told his foster parents that he had also been sexually abused. (N.T. p. 27). Jimmy's foster parents notified Montgomery County Children and Youth Services (CYS) of the alleged abuse. (N.T. p. 136). At the request of CYS, Maddi–Jane Sobel, a clinical social worker, interviewed Jimmy. (N.T. p. 103). In the initial interview on August 1, 1989, Ms. Sobel concluded that Jimmy had not been abused. (N.T. p. 104). Ms. Sobel interviewed Jimmy again on November 28, 1989 after which she concluded that Jimmy had been sexually abused. (N.T. p. 105). Jimmy was then interviewed by Detective Hart of the Montgomery County Detective Bureau in connection with a criminal investigation regarding the allegations of sexual abuse. (N.T. p. 148). Ms. Sobel interviewed Jimmy a third time on December 19, 1989 and additional

details of Jimmy's sexual victimization were revealed. (N.T. p. 114).

As a result of Jimmy's revelations regarding the activities of appellant at the Harley Hotel, appellant was brought to trial, before a jury, on charges of involuntary deviate sexual intercourse, statutory rape and corruption of a minor.[1] During the course of appellant's trial Ms. Sobel was permitted to testify, over the objection of defense counsel, to the general characteristics of child sexual abuse victims as those traits relate to a failure to promptly report abuse, and after the abuse is reported, to reveal the details of the abuse in stages. (N.T. p. 106). The jury returned its verdict of guilty on all counts on September 12, 1990. Trial counsel prepared post-trial motions, which were filed on January 24, 1991. The post-trial motions did not preserve the objection, referenced above, to the expert testimony of Ms. Sobel. Post-trial motions were denied on February 11, 1991.

On March 19, 1991 new counsel entered his appearance on behalf of appellant. On April 5, 1991 appellant was sentenced on all counts to a total of eleven (11) to twenty-four (24) years of incarceration. A timely notice of appeal was filed from the judgment of sentence. On August 24, 1992 the Superior Court dismissed the appeal for failure of counsel to file a brief. Present counsel entered his appearance on December 4, 1996. Appellant then filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq., seeking reinstatement of the right to a direct appeal, nunc pro tunc, and raising issues regarding the ineffectiveness of trial counsel. *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999). (PCRA is proper procedure for obtaining reinstatement of direct right of appeal nunc pro tunc).

After a hearing on the post-conviction petition, the trial court found appellate counsel ineffective for failing to submit a brief to the Superior Court, and accordingly, granted appellant the right to proceed with his direct appeal, nunc pro tunc. By obtaining nunc pro tunc relief, appellant stands as if the

1. See, 18 Pa.C.S. §§ 3123, 3122 and 6301, respectively.

appeal were timely brought following the judgment of sentence. Thus, appellant correctly raises the ineffectiveness of trial counsel, without the necessity of layering the claim referencing the conduct of prior appellate counsel whose representation had been found ineffective. It is as if the actions taken by first appellate counsel had not occurred. *See Commonwealth v. Kenney*, 557 Pa. 195, 732 A.2d 1161 (1999). In its opinion reinstating appellants right to a direct appeal, the trial court declined to address the merits of the claims raised regarding trial counsel's ineffectiveness. The Superior Court reviewed the ineffectiveness claims as to trial counsel and denied relief, affirming the judgment of sentence. This court then granted a Petition for Allowance of Appeal, limited to appellant's allegation of ineffectiveness regarding the omission of a meritorious issue by trial counsel in post-trial motions.

The burden of establishing a claim of counsel's ineffectiveness is on the appellant, as counsel is presumed effective. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985). In reviewing an ineffectiveness claim, the threshold inquiry is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989). Should this threshold be met, we must then apply the "reasonable basis" test to determine if the course chosen by counsel was designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967),*overruled on other grounds, Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Application of the "reasonable basis" test pertains to appellate advocacy as well as trial strategy. *Commonwealth v. Townsell*, 474 Pa. 563, 379 A.2d 98 (1977). If we determine there was no reasonable basis for counsel's chosen course then appellant must demonstrate that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Prejudice is established when an appellant demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988).

Appellant's claim of ineffectiveness requires that we first contemplate the admissibility of the expert witness's testimony which appellant asserts improperly bolstered the credibility of the victim. To properly analyze this claim we must consider the context within which the testimony occurred. Prior to the expert's testimony, Jimmy testified that during the year he resided at the Harley Hotel, appellant had anal and oral sex with him on at least ten occasions. (N.T. p. 21). On cross-examination, Jimmy admitted that he originally told Detective Hart that appellant had sex with him every day during the year Jimmy lived at the hotel. Jimmy admitted that the actual number of sexual encounters was 10, not 300. (N.T. p. 38). Jimmy testified that his first sexual encounter was with his mother and father at age three. (N.T. p. 24–25). Jimmy told of other sexual encounters that also occurred when he was three, with former neighbors in a trailer park. (N.T. p. 24). Jimmy testified that he had frequent sexual encounters while residing at the Harley Hotel with men other than appellant. According to Jimmy, he would sit with his mother at the bar and drink three or four beers, until his mother told him to go to his room. (N.T. p. 43). Once in his room men would knock on the door, saying that his mom had sent them. Jimmy, and sometimes his younger brother, would disrobe, and the men would have sex with them. (N.T. 44–45). Jimmy admitted that although he had revealed this information to his foster parents, when Ms. Sobel first interviewed him he did not tell her that he had ever been the victim of sexual abuse. (N.T. p. 26).

Given the nature of the criminal charges at issue trial counsel pursued a defense strategy designed to attack Jimmy's credibility. Trial counsel was quite candid with the trial court in detailing his intention to discredit Jimmy by underlining the incredible nature of Jimmy's testimony and Jimmy's delay in reporting the abuse. Trial counsel intended to cross-examine Ms. Sobel on her complete reversal of opinion regarding whether or not Jimmy had been abused between her first and second interviews with Jimmy. The thrust of the defense strategy was to demonstrate that this child fooled an expert

574

and therefore, he could easily fool the jury. (N.T. pp. 176–178).

Against this background the jury heard the following exchange when the Commonwealth presented Maddi–Jane Sobel, a clinical social worker, as an expert witness on child abuse:

Q. [by the prosecutor]: All right. Now could you tell the ladies and gentlemen of the jury why James Rosser didn't disclose to you, right away, the sexual abuse?

MR. BATEMAN [trial counsel]: Objection.

THE COURT: That's sustained.

Q.: Ms. Sobel, in cases of child sexual abuse, do children normally disclose, right away, incidents of child sexual abuse?

A.: No.

MR. BATEMAN: Objection. Move to strike.

THE COURT: Overruled.

BY THE COURT:

Q. : This particular area in which the questions are directed to, is this something that's within the common parameters of the average person, or are you testifying, now, based on your expertise in child abuse areas?

A.: In terms of my expertise, is the basis for which I have testified.

THE COURT: All right. I will allow you to ask the question generally.

BY MR. MULLANEY [the prosecutor]

Q.: Generally speaking.

A. Children rarely disclose complete details at once. Depending upon the child's background, and the extent to which the abuse has occurred, depends upon the degree of disclosure that's gotten immediately. Most of the time, children who have been sexually abused, have been sexually abused over a long period, and they are then—what's called conditioned to accept the sexual abuse, and to also feel, on some level, that they participated in it, and it's referred to

as a conditioning continuum. Given the conditioning continuum, and a chaotic background, in which the child has experienced loss of parents, frequent moves, any presence of alcohol or drug addiction, any times of unemployment or poverty, given those factors, the child is extremely unlikely to disclose, immediately, until a child is placed in an environment in which his or her nurturing and dependency needs are met, and in which the child is no longer in fear of any levels of repercussions from disclosure.

Most often, the disclosure occurs in steps, with the child disclosing things that permit the child to experience vulnerability. A child will not do that unless or until the child feels completely secure.

(N.T. pp. 105–107).

■ Appellant argues that the sole purpose of this testimony was to enhance the credibility of Jimmy. According to appellant, Ms. Sobel's testimony explained to the jury that the delay in coming forth and the reluctance in revealing the abuse in his first interview, are factors consistent with child abuse; therefore by displaying these qualities, Jimmy is telling the truth about the abuse. Appellant concludes that by permitting this testimony to come in, the trial court invited the jury to abdicate its responsibility to determine Jimmy's credibility on the ultimate issue in the case. We agree.

■ This court has consistently maintained that expert testimony as to the veracity of a particular class of people, of which the victim is a member, is inadmissible. *Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830 (1992) (expert testimony that the victim displayed behavior patterns consistent with those typically displayed by sexually abused children inadmissible); *Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988) (expert testimony that rape victim suffered from rape trauma syndrome and thus it was of no moment that she could not identify attacker two weeks after assault, yet was positive of his identity at trial inadmissible); *Commonwealth v. Rounds*, 518 Pa. 204, 542 A.2d 997 (1988) (expert testimony that expert believed the victim was not lying when

576

she told expert of sexual abuse inadmissible); *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988) (expert testimony by child psychologist that children do not fabricate sexual experiences in child sex assault trial inadmissible); *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986) (expert testimony of pediatrician that eight year olds do not lie about sexual abuse in a case where victim was an eight year old boy inadmissible).

Expert testimony is generally admissible in any case, where such testimony goes to a subject requiring special knowledge, skill or intelligence beyond that possessed by the ordinary juror. *Seese*, 517 A.2d at 921. A determination of whether or not a witness is telling the truth is a subject well within the ordinary knowledge and experience of the average juror. *Id.* at 922. In rejecting the need for expert testimony on the question of a witness' veracity, this court warned of the consequences, which would follow, should such expert testimony be permitted:

> For example, if testimony as to the veracity of various classes of people on particular subjects were to be permitted as evidence, one could imagine "experts" testifying as to the veracity of the elderly, of various ethnic groups, of members of different religious faiths, of persons employed in various trades and professions, etc. Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member.

*Seese, Id.* Not only is testimony by an expert as to the credibility of any given victim/witness inadmissible for the reasons set forth in *Seese*, but the specific type of expert testimony at issue, describing general characteristics of child victims of sexual abuse, was rejected in *Dunkle* under the umbrella of "child sexual abuse syndrome" as failing to meet the standard for the reliability of expert testimony established

in *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (D.C. 1923).[2]

 Thus, given the consistent rulings of this court striking expert testimony of the type admitted in the instant case we find arguable merit to appellant's underlying claim. *Durst.* Next, we must consider whether trial counsel had a reasonable basis designed to effectuate appellant's interests in failing to preserve the objection to Ms. Sobel's testimony in post-trial motions. *Townsell.* At the post-conviction hearing on this matter, trial counsel did recall his intent to show the jury the inconsistencies between Ms. Sobel's first and second reports, and he did recall a concern with her being called as an expert witness rather than as a fact witness. (N.T. 5/17/97 p. 102). Trial counsel recalled the objection to the general testimony of Ms. Sobel as an expert, however, no explanation was offered for failing to raise this issue in post-trial motions.

The Superior Court found that counsel had a reasonable basis for failing to raise the issue of Ms. Sobel's testimony in post-trial motions. The Superior Court concluded that the claim would not have provided relief to appellant given the cautionary instructions the trial court gave the jury regarding the expert testimony of Ms. Sobel. (N.T. 101–102). Thus, it concluded that counsel had no reason to pursue a fruitless exercise. We do not agree. To the contrary, we find that the cautionary instructions referred to by the Superior Court could not cure the impact of Ms. Sobel's expert opinion. The instructions referred to were given before the objectionable testimony was uttered, and the instructions merely iterated the general rule on expert opinion testimony. These instructions in no sense cautioned the jury to disregard the inadmissible testimony of Ms Sobel as to the general characteristics of sexually abused children. *See Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976). Therefore, we do not find

**2.** Although this court's opinion in *Dunkle* had not been published at the time of appellant's trial, the Superior Court opinion, which was affirmed on this point, was published at the time of appellant's trial. See, *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989).

the Superior Court's analysis as to a reasonable basis for trial counsel's omission persuasive.

The Commonwealth asserts that trial counsel had a reasonable basis for failing to pursue this issue in post-trial motions for two reasons. First, the Commonwealth avers that the testimony was properly admitted given the state of the law at the time of appellant's trial; and second, that the trial strategy was to attack Jimmy's credibility via the inconsistent findings in Ms. Sobel's first and second reports regarding whether or not abuse had occurred. The Commonwealth attempts to support its first assertion by pointing to the fact that this court's decision in *Dunkle* had not been issued at the time of appellant's trial. As stated previously in this opinion, the testimony at issue was inadmissible under a long line of cases preceding *Dunkle*, and the Superior Court opinion in *Dunkle*, which was affirmed by this court in pertinent part, was available at the time of appellant's trial. This assertion is without merit.

Regarding the issue of trial strategy, the Commonwealth asserts that trial counsel knew that he would be opening the door to this type of testimony when he cross-examined Ms. Sobel on the first report where she indicated no abuse had occurred. Thus, the Commonwealth argues, it was properly permitted to bring out on re-direct that Ms. Sobel changed her opinion after the second and third interviews with Jimmy. The initial error in the Commonwealth's argument here is that the testimony at issue was not brought out on re-direct as a response to the defense strategy. The prosecution on direct examination elicited the testimony regarding the general characteristics of sexually abused children, after an objection by trial counsel was overruled. (N.T. 105). Moving beyond the Commonwealth's misstatement as to when this testimony came in, we acknowledge that the Commonwealth is correct in its analysis of counsel's trial strategy. There is no doubt that an attack on Jimmy's credibility was trial counsel's strategy, and we agree that the strategy was reasonably intended to effectuate appellant's interests. Further, we acknowledge that counsel pursued this strategy knowing full well that by

attacking the findings Ms. Sobel made in her initial report, the Commonwealth would rehabilitate her by reference to the second and third reports. In fact, trial counsel wanted the Commonwealth to admit all three reports as that further illustrated for the jury that Jimmy fooled the expert and could not be taken at face value as a witness. (N.T. 175–178).

However, we cannot agree that failure to preserve the objection to Ms. Sobel's expert testimony on the general characteristics of abused children, which testimony directly bolstered the credibility of Jimmy, was part of that strategy. If we would accept the Commonwealth's assertion, the fact that trial counsel made the objection at all is without rational explanation. Further, by admitting the testimony at issue, the points defense counsel wanted to highlight regarding Jimmy's delay in reporting the abuse, and the fact that he originally convinced Ms. Sobel that he had not been abused, were completely undone. We do not agree with the Commonwealth's assertion that trial counsel intentionally omitted this meritorious claim from post-trial motions in keeping with the trial strategy of vitiating the credibility of the Commonwealth's primary witness. Rather, we find the admission of such damaging testimony by Ms. Sobel was in direct conflict with the designed strategy of showing the jury that Jimmy was not credible.

In *Davis,* and in *Rounds,* this court found trial counsel ineffective for failing to object to the inadmissible testimony of the expert witnesses called to bolster the credibility of the victims. In *Townsell,* this court held that failure to preserve an issue of arguable merit for appellate review constituted ineffective assistance of counsel. Given trial counsel's concern regarding Ms. Sobel's testimony as an expert witness, a concern reflected in the fact that he did object to her expert testimony and move to strike same, there can be no discernible reason for failing to preserve this issue in post-trial motions.

Finally, we must determine if counsel's failure has caused prejudice to appellant. The Commonwealth argues

that appellant cannot meet this burden, as the other evidence at trial was sufficiently strong to establish that Jimmy had been abused. Here the Commonwealth points to the testimony of the physician, which revealed anal scarring and tightening of the sphincter muscle consistent with sexual abuse. The Commonwealth also points to the details of the abuse revealed by Jimmy and related by him to his foster parents to support the claim that the abuse did occur. The fact that Jimmy was sexually abused is only one of the issues this jury had to resolve the other issue was whether or not appellant caused that abuse. By permitting Ms. Sobel to bolster the credibility of Jimmy, the jury was not only led to believe that abuse occurred, but also that appellant was the abuser. Only Jimmy's testimony related appellant to the crimes at issue. As trial counsel brought out in cross-examination of the Commonwealth witnesses, other persons identified by Jimmy as his sexual partners were not located. (N.T. 154–156). In addition, there was no physical or circumstantial evidence supporting the details Jimmy testified to regarding his sexual encounters with appellant. Jimmy had given statements and testified that appellant photographed him during sex and videotaped their encounters. When appellant was arrested and his apartment searched, no photographs, cameras, VCR equipment, or pornography was found. (N.T. 85). The Commonwealth's assertion that such overwhelming evidence of appellant's guilt was presented that appellant cannot establish prejudice by the admission of Ms. Sobel's expert testimony is not borne out by the record.

Abundant case law existed at the time of appellant's trial holding testimony such as Ms. Sobel's inadmissible. As this court stated in *Rounds* when addressing the prejudice prong of the ineffectiveness claim in that case, on this identical issue: "When an expert definitively testifies to the ultimate conclusion, as in this case, the improper admission of that evidence must by its very nature be so prejudicial as to require a new trial." *Rounds*, 542 A.2d at 999. Accordingly, we find that appellant has demonstrated that trial counsel's failure to preserve the claim that Ms. Sobel's testimony was inadmissible

caused appellant prejudice. *Pierce.* For the reasons stated herein, the decision of the Superior Court is reversed and the case is remanded to the trial court for a new trial.

Justice SAYLOR files a concurring opinion joined by Justice ZAPPALA.

Justice NEWMAN files a dissenting opinion joined by Justice CASTILLE.

SAYLOR, Justice, concurring.

I agree with the dissent that trial counsel's stated strategy of attacking the victim's credibility through the cross-examination of Ms. Sobel may be viewed as opening the door to some explanation on Ms. Sobel's part, and that the trial court issued a series of fairly specific limiting instructions in an attempt to prevent the jurors from improperly substituting Ms. Sobel's judgment for their own. However, I am unable to agree that Ms. Sobel's testimony was not offered to (and did not have the effect of) bolstering the child victim's credibility, or that trial counsel's strategy necessarily required that the Commonwealth be permitted to offer expert opinion to serve as a counterweight. Indeed, to allow testimony of the kind presented here simply because the defense elects to challenge the victim's credibility through the use of the victim's prior inconsistent statements would vitiate the evidentiary principles embodied in *Commonwealth v. Seese* and *Commonwealth v. Dunkle.*

I believe that adult witnesses confronted with delay and inconsistency in reporting by a child victim should be permitted to offer some explanation of the reasons for their own responsive actions or inaction. I also hold the view that the Commonwealth should be allowed to draw reasonable inferences from the evidence and thus suggest to the jury in closing argument that factors such as the child's age in comparison to the defendant's, the child's stage of intellectual and emotional development, and the nature of the relationship between the child and the defendant may have affected the timing and character of the child's statements. Nevertheless,

I believe that it simply goes too far to permit the Commonwealth, as it did here, to cloak such explanations and inferences with the authority of an expert opinion.

Accordingly, I join the majority in finding that trial counsel was ineffective in failing to preserve the pertinent issue for appellate review.

Justice ZAPPALA joins this concurring opinion.

NEWMAN, Justice, dissenting.

I dissent. The Majority finds that counsel for Peter Balodis (Appellant) was ineffective for failing to preserve objections to the testimony of Maddi–Jane Sobel (Sobel). I disagree. Pursuant to Pennsylvania law, counsel is presumed effective and the burden is with Appellant to prove otherwise. *Commonwealth v. Pierce*, 515 Pa. 153, 157–61, 527 A.2d 973, 975–76 (1987). To do so, Appellant must show that his counsel had no reasonable basis in serving his client by making the chosen decisions during trial. *Id.* The test should not be whether he made the best available decision, but merely whether the decision is a reasonable one under the circumstances. *E.g., Commonwealth v. DeHart*, 539 Pa. 5, 17–19, 650 A.2d 38, 44 (1994). Following a full review of the record, I cannot conclude that Appellant has proven that defense counsel was ineffective at trial or in post-trial motions. As more fully set forth below, I find that counsel had a rational basis for his actions; and they were reasonable based on the decisional law at the time in which this case was tried.

First, I disagree with the Majority's conclusion that by permitting the testimony of Sobel, the trial court invited the jury to abdicate its responsibility to determine the credibility of the child on the ultimate issue in this case. Rather, it is evident from a review of both the cross-examination of the child and of Sobel that the testimony was not used to bolster the testimony of either witness. Instead, defense counsel used the testimony of Sobel as an intentional trial strategy to undermine the statements of the child and to show that Sobel initially did not believe that the child was abused. It was also

used to set forth the many inconsistent and contrary statements that this child made to the authorities involved, including Sobel.

While it is true that the Commonwealth initially called Sobel as a witness, it was the defense, through his articulation of trial strategy to the court and in his cross examination of the child, that placed her reports into issue at trial.[1] Indeed, during the cross-examination of the ten-year-old boy, defense counsel questioned him at length regarding his conflicting stories of the abuse. (N.T. at 29–74.) Defense counsel raised the child's differing stories to the investigators, including Sobel, regarding the dates of the abuse, the number of other men involved in the abuse, and the location of the sexual acts at issue. (*Id.*) The boy admitted during this cross-examination that he told Sobel, in his first meeting with her in August of 1989, that "none of this happened to him." (N.T. at 52.)

The Majority makes much of the fact that defense counsel objected to one of the questions of the prosecution to Sobel and that this objection belies that counsel had as an intentional trial strategy to use Sobel's later testimony that the child had been abused. However, counsel's own cross-examination of Sobel and statements to the court *during* trial indicate that this was indeed his strategy.[2] In counsel's cross-examination of Sobel, he questioned her quite extensively about her interviews with the boy and asked her opinion regarding whether

1. On direct examination Sobel testified as to the statements that appeared in her first report of August 1989, including that the child had denied any sexual abuse. She also was asked about the reasons why she re-interviewed the child in November of 1989 and in response detailed the claims of sexual abuse that the boy at that time reported. The assistant district attorney then questioned her regarding the reasons the child did not disclose to her in the first interview that he had been abused, but did so in the subsequent interviews (N.T. at 103–105.) In the course of this questioning, Sobel indicated that it was "normal" for children initially not to disclose incidents of abuse and gave a general description of children who have been sexually abused. (N.T. at 106–107) It was in this context that the testimony quoted by the Majority introduced at trial.

2. Trial counsel testified at the PCRA hearing that he "wanted the entire report in because I thought that would show more inconsistencies of the victim." (N.T., PCRA, 5/12/97, at 99).

584

the child had been sexually abused. (N.T. 111) Further, the defense counsel continued to probe Sobel about her third interview with the child in February of 1990, an interview about which the Commonwealth had not even specifically addressed with Sobel. (N.T. 115–119). Moreover, counsel's own words *during the trial* show that his strategy was to elicit the opinion of Sobel regarding her assessment of the child. Counsel stated "*I fully intend to argue to the jury that she believed him . . . all three times—even though his stories, in my judgment, were different.*" (N.T. at 177)(Emphasis added). The court *even* made a point to note on the record that he admitted Sobel's testimony because of the request of defense counsel. The trial court stated:

> Ordinarily I would not allow that [Sobel's testimony] in. I allowed it in because of the fact that the defense—and *we discussed this before* we came into the room, **before Maddi-Jane Sobel even took the stand**—and *I only allowed her opinion in because of the fact, from the Commonwealth's standpoint, because of the fact that it had been brought in by the defense.* I know you told me your trial strategy—and I can't disagree with it—but I think you ought to put that on the record; because it wasn't on the record before she testified.

(N.T. at 175–176.) (Emphasis added) The trial court had defense counsel place on the record that testimony of Sobel was introduced as his trial strategy. Defense counsel specifically indicated that he "took it upon himself to elicit that opinion testimony." (N.T. at 176.) Counsel further explained that the reasons he elicited the testimony was that at the first interview, the expert witness wrote a report indicating that she believed that the boy had not been sexually assaulted, and that it was only after the second and third interviews that the child had said he was abused. Defense counsel went on to state that:

> *I understood what I was doing—if I could place that on the record—that that would open the door for the Commonwealth to introduce her opinion as to the second and third interviews,* and *I fully intend to argue to the jury that she*

*believed him ... all three times—even though his stories, in my judgment, were different.*

\* \* \*

And I will say, right now, that *I believe that was the correct strategy under the circumstances.*

(N.T. at 177–78)(Emphasis added)

In addition, the trial court gave many cautionary instructions throughout the trial regarding the role of the jury in evaluating the testimony of Sobel. Before Sobel testified, the trial court instructed the jury that "she is permitted to testify first as a fact witness, as to some of the facts that occurred and second, she is also permitted to tell you about manifestations of sexual abuse in children generally." (N.T. at 102.) Later, the court instructed the jury:

There was a question asked by defense counsel, with respect to the first report, and an opinion was requested. I will allow you [the prosecutor] to ask whether or not that opinion has changed, but again, I am emphasizing that her opinion is not what's important. The only person that can determine whether or not there was a child abuse situation here is you, and you have to determine who did it. You are the ones who make that decision.

(N.T. at 123.) Then, in its charge to the jury the trial court instructed:

I want to make a special comment about Maddi–Jane Sobel's testimony. I believe I mentioned this before, but I want to mention it again. During the course of the direct examination, questions were asked, relating to whether or not she believed that [the child] had been sexually abused. That opinion which was rendered cannot be considered by you as substantive evidence and cannot be considered by you as opinion evidence on her behalf. You are the people who have to decide the issue. That's the real issue here

whether or not he was abused, and by whom. You have to decide that issue.

(N.T. at 224–25)

Second, I disagree with the Majority's conclusion that the strategy of the trial counsel was not reasonable given the law in September of 1990. Indeed, the jurisprudence in this area was such that the Superior Court had interpreted our decisions in *Seese, Davis, Gallagher* and *Rounds* to mean that an expert's testimony exceeds permissible bounds only if the expert specifically commented upon the veracity or credibility of the victim. However, testimony regarding the general behavioral and psychological characteristics of sexual abuse victims was admissible. *E.g., Commonwealth v. Cepull,* 390 Pa.Super. 167, 568 A.2d 247 (1990); *Commonwealth v. McIlvaine,* 385 Pa.Super. 38, 560 A.2d 155 (1989); *Commonwealth v. Baldwin,* 348 Pa.Super. 368, 502 A.2d 253 (1985); *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 331 n. 1, 534 A.2d 106, 108 n. 1 (1987). These decisions certainly left open the conclusion that Sobel's testimony was admissible if not used for the purpose solely to sustain the credibility of the victim.

In particular, on January 3, 1990, only a few months before the trial at issue here, the Superior Court in *Cepull, supra,* specifically held that a "generalized description of rape trauma syndrome" did not conflict with the holding of this Court in *Seese* and did not "improperly enhance the victim's credibility." 568 A.2d at 248–49. *See also Commonwealth v. Stonehouse,* 521 Pa. 41, 59–61, 555 A.2d 772, 782 (1989)(expert testimony regarding general characteristics of victim's psychological and physical abuse is admissible.) Because our decisions at the time did not specify that expert testimony regarding the general characteristics of an abused victim would be *per se* inadmissible, and because the Superior Court had clearly held that such generalized testimony was admissible, I would find that trial counsel's strategy was eminently reasonable.

Finally, I disagree with the Majority's conclusion that the testimony of Sobel, assuming it was inadmissible, caused

prejudice to Appellant. I believe that the evidence at trial was sufficiently strong to establish that the child had been abused. In particular, the testimony of the pediatrician revealed anal scarring and tightening of the sphincter muscle consistent with sexual abuse and the details of the abuse revealed by the boy and related by him to his foster parents support the claim that the abuse did occur. The child steadfastly identified Appellant as one of his abusers and did not waver from this testimony despite his age and the fact that he was subjected to extensive cross-examination. As set forth above, I do not agree that the testimony of Sobel was used to bolster the credibility of the child. In fact, defense counsel used it in just the opposite manner and yet the jury concluded that Appellant did indeed rape and sodomize this child on repeated occasions. This case is not like *Seese, Rounds* or *Davis* where the expert gave testimony directly commenting on the truthfulness of the victim and I would accordingly affirm the decision of the Superior Court.

Justice CASTILLE joins this Dissenting Opinion.