**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FERNANDO ROSARIO | : | |
| Appellant | : | No. 2532 EDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000512-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FERNANDO ROSARIO | : | |
| Appellant | : | No. 2534 EDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002943-2015

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 6, 2022**

Appellant, Fernando Rosario, appeals from the order entered November 5, 2021, dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1] We affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. § 9541-9546

Following a multi-day jury trial, Appellant was convicted of involuntary deviate sexual intercourse, rape by forcible compulsion, aggravated indecent assault, aggravated assault, sexual assault, terroristic threats, simple assault, recklessly endangering another person, and false imprisonment[2] for multiple incidents involving his former girlfriend, C.T. He was sentenced to 10 to 20 years imprisonment on June 1, 2016. Throughout his trial and sentencing, Appellant was represented by the same attorney (hereinafter "trial counsel").

After having his post-sentence and appellate rights reinstated *nunc pro tunc*, Appellant, represented by another attorney, filed a post-sentence motion on November 7, 2016. After a hearing, the trial court denied Appellant's post-sentence motion on January 25, 2017. Appellant did not file a direct appeal. PCRA Court Opinion, 2/7/22, at 2-3.

Instead, Appellant, through counsel, filed the instant PCRA petition on February 23, 2018. The PCRA court held a hearing on May 10, 2019, addressing both the timeliness of Appellant's petition and the underlying merits of his claims. On November 25, 2019, the PCRA court dismissed the petition as untimely without conducting a merits analysis. This Court reversed the dismissal order on June 8, 2021, and remanded the case for a decision on the merits. ***See Commonwealth v. Rosario***, 258 A.3d 504 (Pa. Super. 2021) (unpublished memorandum). After subsequent briefing, the PCRA

---

[2] 18 Pa.C.S.A. §§ 3123(a)(1), 3121(a)(2), 3125(a)(1)-(3), 2702(a)(1), 3124.1, 2706(a)(1), 2701(a)(1), 2705, and 2903(a), respectively.

court again dismissed Appellant's PCRA petition on November 5, 2021. This appeal followed.[3]

Appellant raises the following issues for our review:

> I. Was trial counsel ineffective for failure to obtain and introduce Appellant's medical records?
>
> II. Was trial counsel ineffective for allowing the sexual assault expert to give an opinion on the credibility of a rape victim?
>
> III. Was trial counsel ineffective for allowing the protection from abuse (PFA) order to be entered into evidence without objection?
>
> IV. Was trial counsel ineffective by allowing evidence of Appellant's prior history to be admitted?

Appellant's Brief at 3 (extraneous capitalization omitted) (reordered for ease of disposition).

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

> We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

---

[3] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Appellant's claims allege ineffective assistance of trial counsel.

> Counsel is presumed to be effective, and the petitioner bears the burden of proving that counsel's assistance was ineffective by a preponderance of the evidence. To prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove the following three elements: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) petitioner suffered prejudice as a result of counsel's action or inaction. To establish prejudice, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, a court need not analyze the elements in any particular order. Failure to satisfy one element is dipositive.

***Commonwealth v. Hairston***, 249 A.3d 1046, 1061–1062 (Pa. 2021) (internal citations omitted). We further explained:

> A claim has arguable merit where the factual averments, if accurate, could establish [grounds] for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted).

In his first claim, Appellant argues that trial counsel was ineffective for failing to obtain or introduce Appellant's medical records regarding injuries he sustained from C.T. Appellant's Brief at 9. By way of background, the PCRA court explained, "[o]n the evening of January 4, 2015, [Appellant] held a knife to [C.T.'s] throat. In response to [Appellant's] actions, [C.T.] threw hot oil on Appellant, for which he sought medical care at Bryn Mawr Hospital." PCRA Court Opinion, 2/7/22, at 5 (record citation omitted). Appellant received additional treatment while at the Montgomery County Correctional Facility. N.T. PCRA Hearing, 5/10/19, at 14. Appellant argues that the case "basically came down to she said/he said issue[s] with regard to the rape," and introducing the medical records bolstered Appellant's testimony. Appellant's Brief at 10. Appellant further asserts that, while the medical evidence was not contested at trial, the Commonwealth "made out that [Appellant] was a manipulator and liar[,] and his testimony could not be trusted." ***Id.*** at 11 (record citation omitted). Thus, the medical records would support the truthfulness in his testimony at trial. ***Id.*** Appellant concludes that he was prejudiced by trial counsel's failure to introduce the medical records because

it "probably effected the outcome of the proceedings against the Appellant." ***Id.***

At the May 10, 2019 PCRA hearing, trial counsel testified that because no one disputed that C.T. threw hot oil on Appellant, the medical records had little probative value but could undermine the defense. N.T. PCRA Hearing, 5/10/19, at 34. Trial counsel explained that, at trial, Appellant's injuries were described on "numerous occasions," including in counsel's opening statements and closing arguments, at length in Appellant's testimony, in testimony from detectives, and in letters introduced between Appellant and C.T. ***Id.*** at 62-66. When asked why he believed the medical records[4] could have undermined his defense strategy, trial counsel explained:

> So the recitation that you just went over [concerning evidence elicited at trial about Appellant's injuries] was from letters from [Appellant] as well as [Appellant's] testimony[, which,] you know[,] obviously having to comply with the rules of professional responsibility[,] that gave me a good faith basis to argue [ ] to the jury that those injuries to [Appellant] were so severe that it would have rendered him physically incapable of actually having any kind of sex, forced or otherwise, on the complainant.
>
> Upon hearing what was read about those medical records, I have no doubt he was in pain and had burns. I didn't hear any where near an explanation that those injuries were as severe[. N]o where in those medical records does it appear to say that anything that he would have been physically incapable of ultimately moving or thrusting himself on the complainant.

---

[4] Trial counsel candidly admitted that he did not obtain any medical records and only heard of their contents while at the May 10, 2019 PCRA hearing. ***See*** N.T. PCRA Hearing, 5/10/19, at 34-35, 66-67.

> So those medical records would have hamstrung my ability to make those strong arguments to the jury. I am confident of that.

***Id.*** at 67.

The PCRA court credited trial counsel's testimony and determined he had a reasonable basis for his actions. "As stated on the record, trial counsel wanted his client to be able to present his version regarding his injuries, and did not want to risk the medical records to dispute his testimony." PCRA Court Opinion, 2/7/22, at 5. Upon our review, we find no error in the PCRA court's determination, which is supported by the record. Consequently, Appellant's first claim fails.

In his second claim of ineffectiveness, Appellant argues that trial counsel failed to object to certain testimony of the Commonwealth's sexual assault expert which purported to bolster the credibility of C.T. Appellant's Brief at 14. Contextually, the PCRA court explained:

> In [its] case in chief[,] the Commonwealth presented testimony from the sexual assault nurse who met with the victim at the hospital on the night of the rape. [The nurse] who met with the victim[ testified at trial and] was also certified as an expert in sexual assault examination and sexual abuse. On cross examination of the witness, defense trial counsel questioned her as to the length of time after arriving at the hospital, and the number of times she was questioned, before the victim indicated that [Appellant] had sexually assaulted her. Defense trial counsel seemingly intended to discredit the victim with this line of questioning, eliciting information that the victim did not initially report the assault, and that it was only after repeated questioning that she mentioned it.
>
> On re-direct[,] the Commonwealth questioned the expert witness as to whether it was common for a sexual assault victim, not this specific sexual assault victim, to withhold that she had been

> sexually assaulted at a first interview. The expert indicated that it is common for a victim to not initially disclose a sexual assault, indicating that it often takes repeated questioning of the victim before the victim discloses all of the details.

PCRA Court Opinion, 2/7/22, at 6-7 (record citation and footnote omitted).

Appellant argues that failing to object to the expert's testimony "totally undid [trial counsel's] cross examination questioning her credibility because of not immediately reporting the sexual abuse." ***Id.*** at 16. He contends that the holdings of ***Commonwealth v. Balodis***, 747 A.2d 341 (Pa. 2000), and ***Commonwealth v. Dunkle***, 602 A.2d 830 (Pa. 1992), preclude expert testimony regarding behavior of a sexual assault victim because it bolsters credibility and does not require expert testimony. ***Id.***

Importantly, as the Commonwealth notes, the enactment of 42 Pa.C.S.A. § 5920[5] (relating to the admissibility of expert testimony in cases

---

[5] Effective August 28, 2012 (as amended), Section 5920 provides, in relevant part:

> **(b) Qualifications and use of experts.** - -
>
> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

*(Footnote Continued Next Page)*

involving sexual or domestic violence) "effectively overruled ***Dunkle*** to the extent that case can be read as categorically prohibiting expert testimony concerning victim behavior in response to sexual abuse due to it being within the ken of laypeople and not requiring expert analysis." ***Commonwealth v. Jones***, 240 A.3d 881, 896 (Pa. 2020). Rather, expert testimony is admissible so long as it does not invade the jury's role in assessing credibility; whether the testimony does so is determined on a case-by-case basis. ***Id.*** at 896-897. For cases in which a duly-qualified expert testifies generally about victim responses or behaviors, but makes no comment about a specific victim's truthfulness, such testimony is admissible. ***See Commonwealth v. Carter***, 111 A.3d 1221, 1223 (Pa. Super. 2015) (upholding expert testimony regarding, generally, sexual abuse victims' delay in reporting that did not opine on the specific victim or victim's credibility), *appeal denied*, 140 A.3d 11 (Pa. 2016).

Appellant does not challenge the qualification of the sexual assault nurse as an expert during the trial. Instead, he argues that trial counsel should have

---

> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S.A. § 5920(b).

objected because the subject matter did not require expert testimony. Appellant's Brief at 14. This is directly contrary to the statutory authorization of expert witness testimony regarding victim responses and behaviors. ***See*** 42 Pa.C.S.A. § 5920(b)(2); ***Jones***, ***supra***. Moreover, the PCRA court emphasized that the expert did not opine as to the credibility of C.T. or her rape claims:

> [Appellant] mischaracterizes the testimony of the witness. The witness was not asked to, and did not, speak to the credibility of the specific victim, as asserted by [Appellant]. The testimony provided by the expert witness explained what generally occurs when sexual assault victims are questioned. She did not address the credibility of this specific victim.

PCRA Court Opinion, 2/7/22, at 7 n.11. Accordingly, the expert witness's testimony, which opined on victim behaviors in delayed reporting of sexual abuse, without rendering an opinion on the truthfulness of C.T. own report, was admissible in Appellant's trial. ***Carter***, ***supra***; 42 Pa.C.S.A. § 5920(b)(2). Therefore, Appellant cannot show there is arguable merit to his underlying claim, or that trial counsel lacked a reasonable basis for failing to object to its admission at trial. ***Stewart***, ***supra***. His second claim, thus, affords him no relief.

In his remaining claims, which we address together, Appellant argues that trial counsel was ineffective for allowing the admission of evidence of the

May 11, 2015 protection from abuse ("PFA") order[6] and his ten-month period of incarceration between December 2013 and October 2014. Appellant's Brief at 11, 16. Regarding the PFA order, Appellant argues this was error because the PFA court specifically precluded its use. ***Id.*** at 12. While Appellant concedes a reasonable basis may exist for allowing the underlying facts of the PFA petition to be entered into evidence, no reasonable basis existed for admission of the order because it "placed in the mind of the jury that the allegations must have been true[.]" ***Id.*** at 13. Appellant further argues that evidence of his ten-month incarceration was inadmissible due to its irrelevance to the instant charges or his prior *crimen falsi* convictions. ***Id.*** at 17. Moreover, trial counsel failed to request a curative instruction regarding this evidence. ***Id.*** at 17-18. Consequently, Appellant argues that the "jury was left with the conclusion that the Appellant was a bad man, and most likely committed the crimes for which he was accused." ***Id.*** at 18.

Again, the PCRA court credited trial counsel's testimony. Trial counsel testified that C.T. had "significant injuries" as a result of Appellant's abuse, as well as a history of violence that Appellant committed against her. N.T. PCRA

---

[6] In his Rule 1925(b) concise statement, statement of questions involved, and heading of the pertinent section of his argument, Appellant limits his challenge solely to the admission of the PFA order entered May 11, 2015. He makes no mention of the related PFA petition or temporary PFA order which was also admitted at trial. Consequently, he waived these aspects of his claim. ***Commonwealth v. Fallon***, 275 A.3d 1099 at *6-7 (Pa. Super. 2022) (slip opinion); ***see also In re M.Z.T.M.W.***, 164 A.3d 462, 466 (Pa. Super. 2017).

Hearing, 5/10/19, at 44-45. Consequently, the defense trial strategy was to concede the physical assault charges in an effort to "avoid the more serious conviction" of rape. ***See id.*** at 38, 43-44. He explained:

> [Y]ou have to understand the whole background of this particular case [including an] understanding [as to] what the defense was in this particular case. [ T]his was a credibility case. This was [ ] the complainant fabricating a rape because of a volatile physical[ly] and verbal[ly] abusive relationship that she had with [Appellant].
>
> And obviously in discussions with [Appellant,] we liked to humanize [Appellant]. He knew and when you read the transcripts I am sure you saw, we were tacitly conceding - - when I say tacitly conceding, I wasn't asking the jury to find him guilty of lesser included assault offense but we were tacitly implying that we knew he was going to be found guilty of them in an effort to avoid the more serious conviction that we obviously were unsuccessful at avoiding.
>
> But the information about him being incarcerated, recall that the complainant and [Appellant] had just begun their relationship like a couple days before his incarceration. And they stayed in contact, there were letters that [Appellant] wrote her. We liked the language of the letters. The fact that she stayed with him while he was incarcerated, we wanted the jury to hear that.
>
> And if you recall the allegation of the rape itself was like right after he got out of jail[,] he's alleged to have raped her. And so we wanted the jury to hear you were barely with this guy because you were with him for a few days, then there was a ten-month lapse when you weren't with him.
>
> [W]e benefit if the jury hears it. We benefit if the jury hears that ten months of that time he was incarcerated, [then] a couple days [ ] after he gets out he's accused of raping her.
>
> We were happy that that would question and attack her credibility. That is why [Appellant] benefited from that.

***Id.*** at 37-39. In other words,

> [Trial counsel and Appellant] had an understanding and an agreement that we were not going to win the entire case and therefore we should in essence take advantage of conceding implicitly his guilt on the assault charges, but that gives us credibility to that [before the] jury.
>
> It humanized [Appellant] by some of the evidence we were going to allow them to hear. The goal was to say he was abusive, he was physical, hint, hint, you may find him guilty of these assault charges[,] but it is because of that, because of his abusiveness that the complainant in this particular case has decided to fabricate the rape.
>
> And so understand we are admitting implicitly that he is guilty of that [assault,] but also understand that that should indicate to you that complainant had a motive to lie.

***Id.*** at 43-44. Thus, as a matter of trial strategy, in which Appellant agreed and actively participated, the defense welcomed evidence of the PFA order and incarceration. ***See***, ***e.g.***, ***id.*** at 45-46.

Trial counsel testified multiple times as to Appellant's intelligence and his involvement in preparing a strategy over the several months prior to trial. Counsel explained that, during their first encounter, Appellant "had a large amount of paperwork including sample cross examination questions and points that he was interested in raising. [ H]e's an intelligent guy and he was at a high level of involvement. So he had everything that he wanted to talk about." ***Id.*** at 33. They reviewed everything in the case together, including creating an outline in preparation for Appellant's testimony. ***Id.*** at 42, 54. Moreover, trial counsel explained,

> And you had to understand, I know from the get go [Appellant] without a doubt was going to take the stand and testify[,] and so you have to be more thorough about making sure that your client

> is on board with your theory because obviously he is - - ultimately he is going to take the stand and you don't want him to shoot your defense out of the water.

***Id.*** at 46. Appellant's testimony at trial aligned with the trial strategy, where he testified regarding the PFA, violations thereof, and prior incarceration. ***Id.*** at 53-54, 59-60. Thus, trial counsel testified, Appellant agreed with, and never opposed, the defense strategy. ***Id.*** at 43, 45-46, 52-53, 55, 58, 59-60.

The PCRA court determined that allowing evidence of the PFA and period of incarceration was a decision "based upon a specific trial strategy" for which trial counsel had a reasonable basis. PCRA Court Opinion, 2/7/22, at 6, 7-8. Moreover, the PCRA court credited trial counsel's extensive testimony that demonstrated Appellant's active involvement in the trial strategy. ***Id.*** at 8. It opined, "[t]he PCRA statute does not require that the strategy be effective, but merely that trial counsel had a reasonable basis for his decision, which is clearly the case." ***Id.***

We conclude that the record supports the PCRA court's conclusion. Appellant cannot demonstrate that no competent counsel would have chosen this strategy. ***Stewart***, ***supra***. Moreover, because Appellant actively planned and participated in the trial strategy allowing references to the PFA order and prior incarceration, highlighted by his own trial testimony, he may not now assert trial counsel was ineffective for pursuing such course of action. ***See Commonwealth v. Brown***, 196 A.3d 130, 174 (Pa. 2018) ("a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy

will not later be heard to complain that trial counsel was ineffective on the basis of that decision."), *quoting* ***Commonwealth v. Paddy***, 800 A.2d 294 (Pa. 2002). Consequently, Appellant's final two claims fail.

Finally, because we conclude that all four of Appellant's claims lack merit, Appellant cannot succeed on the basis of cumulative prejudice. ***See Commonwealth v. Hutchinson***, 25 A.3d 277, 319 (Pa. 2011) (explaining that "cumulative prejudice from individual claims may be properly assessed in the aggregate" only when "the individual claims have failed due to lack of prejudice[.]"). Accordingly, the PCRA court properly dismissed Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2022